FARMERS INSURANCE COMPANY, Appellee, v. LINN COUNTY et al., Appellants.

**TAXATION:** Assessment—Erroneous Classification—Waiver. An insurance company which lists its corporate stock to itself as personal property, and at an inadequate value which it induces the assessor to accept,—all on the assumption that it was subject to the consolidated levy,—and thereafter interposes no counter objection, may neither obtain a *refund* for taxes paid nor *enjoin* the collection of taxes unpaid, on the theory that the property was in fact only subject to a 5-mill levy, as moneys and credits. (See Book of Anno., Vol. 1, Sec. 7235.)

Headnote 1: 37 Cyc. p. 1176.

*Appeal from Linn District Court.*—F. O. ELLISON, Judge.

MAY 11, 1926.

REHEARING DENIED OCTOBER 22, 1926.

Mandamus to compel refund of alleged excessive sums collected for taxes for the years 1916 to 1920, inclusive, and to enjoin the collection of an alleged excess in the assessment for 1921. Decree for plaintiff, except as to the years 1917 and 1919. Both parties appeal.—*Reversed* on defendants' appeal; *affirmed* on plaintiff's appeal.

*W. J. Barngrover*, County Attorney, for appellants.

*Grimm, Wheeler & Elliott*, for appellee.

MORLING, J.—Plaintiff's contention is that its stock should have been assessed for the 5-mills tax on the valuation, under Section 1310, Code Supplement, 1913, instead of for the consolidated levy, as provided by Section 1305. Claim was also made in plaintiff's pleadings and evidence, though not pressed here, that all other property was persistently undervalued. Plaintiff demands a refund of the excess paid, and a cancellation of the excess for the year not paid. The par value of the stock of the plaintiff, Farmers Insurance Company, 2,000 shares, was $200,000. Of the 2,000 shares, the president, Smith, held 1,370. Smith, the president, and Jenkins, the secretary, were the only active officers. The assessment roll for each year was stated on its face to be that of the Farmers Insurance Company. The affidavit in each case purported to be that of the Farmers Insurance Company; and except in 1921, when it was signed by Jenkins, it was signed by Smith. The affidavit was to the effect that the statement was correct of all moneys, credits, and liabilities and all taxable property that should be listed to affiant. No shareholder was named in the assessment roll. For each of the years 1916, 1917, 1918, 1919, and 1920, Smith gave to the assessor a valuation of the stock of the company. The formal reports required by Section 1323, Code of 1897, and Section 1333-a, Code Supplement, 1913, appear not to have been required, or furnished to the assessor. The assessor testified that Smith would have "the figures showing the risk, reserves, and one thing and another, and say, 'That is what I have got,' and give the estimated value of the stock as his idea of what it was worth." Also: "I don't know as Mr. Smith furnished a statement of total risks, etc., but he would have some estimate in figures he would turn in." The assessor took such valuations without further investigation, and entered on the personal-property roll, in the line for "corporate stocks and shares" (to which for 1916 and 1920 were added the words "and for stockholders," or words of similar import), a sum equal to 80 per cent of the figures so given. In the personal-property rolls for 1917 and 1919, these entries were made in the lines of the assessment roll for "actual value bank stock and other moneyed capital * * * less 20 per cent." In the 1919 roll, there was also added to the entry, "and for the individual stockholders." The real estate was additionally valued in the odd-numbered years at

$42,000 ($40,000 in 1921). The amounts were extended by the assessor upon his assessor's books. Only the one valuation, and in the one place referred to, was entered on the personal-property roll. Such assessed valuation for 1916 was $176,500; 1917, $178,500; 1918, $179,500; 1919, $183,000; 1920, $159,000; 1921, $199,000. In 1901, a decree in a suit by the company against the county had been entered without the introduction of evidence, fixing the value of the shares at $101.40 for the year 1900. The secretary testified that the later assessments were based on this valuation and the annual increase or diminution of surplus. In the roll for 1917, or on the copy left with the company, there was a lead-pencil mark leading from the line for moneyed capital to the line for corporation stock. The receipts for the taxes on these assessments gave the tax value of the real estate and personalty separately, and in each case the valuation is obviously one fourth of the returned valuation. For instance, the receipt for the first payment of the tax for 1916 recites: "Personal, valuation $44,125 ( real estate described) $10,500." The receipts give the total tax in 1916, $5,595.05; 1917, $6,080.29; 1918, $5,759; 1919, $6,384.38; 1920, $6,558.75; 1921 (not paid), $7,761. These taxes were paid in semiannual installments. Smith died in 1920. His 1,370 shares were appraised in September, 1921, for the inheritance tax, at $458.90 per share, and the inheritance tax was paid on that basis. In 1921, all of the stock of the plaintiff company was sold to a company in New York City at $460 per share. Dividends of 10 per cent were paid each year until 1920, when it was 12 per cent, and 1921, when none was paid. No objection to the method of taxation or to the taxes appears to have been made prior to March 7, 1922, on and after which objections and demands for refund and cancellations were made, on the ground that the assessments should have been made at the 5-mill rate on the valuation of the shares, besides the real-estate tax. The court held that the rolls for 1917 and 1919 failed to show that plaintiff was assessed with any shares; that this might have been through an error by the assessing officer; and that "it is not such a matter as may be corrected or remedied in this proceeding." A refund was decreed for the other years for which the taxes were paid, and cancellation for the excess above the 5-mill tax for 1921.

Section 1333-a, Code Supplement, 1913 (Acts of the Twen-

ty-eighth General Assembly, Chapter 43), required the shares of stock of every insurance corporation to be assessed as provided in Sections 1323, 1324, and 1325, and as in that act provided. Section 1333-c, Code Supplement, 1913, provided for the assessment of moneys and credits of every domestic insurance company, with certain exceptions. Section 1323, Code of 1897, required the corporation to furnish to the assessor a verified and particularized statement; and in addition, Section 1333-b required the furnishing of a copy of the annual report made to the auditor of state. Under Section 1324, Code of 1897, if the assessor was not satisfied with the valuation so furnished, he might make one of his own.

Formal statements were not furnished. Instead of complying with the law, the company, through its executive officer (the stockholder individually most concerned), gave informal estimated values, which the assessor accepted. These estimates were, we think, so given with the purpose that they should be accepted, and plaintiff undoubtedly knew that they were so accepted. They were all (exclusive of the real estate) valuations made on the personal-property assessment roll. It is not shown that the duplicate rolls and assessments were not delivered to the company. Some of them were. It is presumed that the law requiring their delivery was complied with. Plaintiff made no complaint, and did not appear before the board of review. The assessments assailed are not for a single year, but for six years. Five of them were made on the reports and valuations given by Smith, the chief executive officer, and the individual stockholder most deeply interested. Each year, the taxes were paid and receipts given, plainly showing the computation of tax for the consolidated levy upon one fourth of the valuation. The receipt for the first year in controversy, 1916, for instance, gives the total value, $54,625; consolidated tax, $5,599.05. Plaintiff would know at a glance that it was not assessed either on the valuations of $176,500 and $42,000 or at the 5-mill rate, which, for the year 1916, would have made the tax on the personalty $882.50. The total tax paid for that year was $4,522.81. Plaintiff did not, under the management of Smith, nor did Smith on his own account, ever claim any error. It is argued that the error was not one of assessment or classification, but of computation, with which the board of review had nothing to do, and that the case

is not within *Griswold Land & Credit Co. v. County of Calhoun,*
198 Iowa 1240. We think that the error claimed (if such) was
one of assessment and classification, and that, under the *Gris-
wold* case, the court has no jurisdiction to change the tax. If
the error were one of computation, the plaintiff had a ready
remedy through the auditor. Code Supplement, 1913, Section
1385-b; *First Nat. Bank v. Anderson,* 196 Iowa 587; *Lamont Sav.
Bank v. Luther,* 200 Iowa 180. We are of the opinion also that
the stock was voluntarily submitted to taxation as personal
property, subject to the consolidated levy, rather than as mon-
eyed capital, and that the payment of the tax should be held to
have been voluntary. *Slimmer v. Chickasaw County,* 140 Iowa
448; *Harris v. Fremont County,* 63 Iowa 639; *Odendahl v. Rich,*
112 Iowa 182; *Kehe v. Black Hawk County,* 125 Iowa 549;
*Braddock Iron Min. Co. v. Erskine,* 155 Minn. 70 (192 N. W.
193). As stated. the plaintiff was responsible for the valuations,
which, after the making of necessary deductions and additions,
appear to have been on a basis of approximately $140 to $155 per
share. We are of the opinion that the stock is shown to have
been worth about three times that. Plaintiff claims that the sale
price is not evidence of value. We think it is. *Morril v. Bentley,*
150 Iowa 677. Plaintiff also claims that the purchaser of the
stock, by reason of its ownership and connection with other
companies, could carry its own re-insurance, which in 1920
amounted to $300,000, and that, because thereof and of econo-
mies in agency force and for other reasons, the stock was worth
more to that particular purchaser than it would have been on
the market generally. It is not claimed, and we think cannot be
claimed, that the amount formerly spent for re-insurance was
not offset, in large part at least, by expense or liability and addi-
tional reserve. The saving could be applied to the stock of any
company for sale, and would furnish no inducement for paying
a greatly excessive price for the stock in the plaintiff company
or in any other particular company. Smith had refused to sell
his stock. It was paying 10 per cent dividends. Shortly after
Smith's death, it was appraised and sold for approximately $460
per share. We think the evidence shows it to have been the
purpose of the company, in giving the valuations, to submit the
property to assessment, and to pay taxes at the consolidated rate
upon those valuations, which were known to plaintiff not to be

the actual valuations of the property. To permit the plaintiff now to recover would be to permit it to change the basis on which both plaintiff and the taxing authorities intended that the property should be classified and taxed. The granting or withholding of a writ of mandamus is governed by equitable principles. *Vincent v. Ellis,* 116 Iowa 609; *Funck v. Farmers Elev. Co.,* 142 Iowa 621; *State ex rel. Hyde v. Jackson County Med. Soc.,* 295 Mo. 144 (243 S. W. 341); *People ex rel. Durant L. Imp. Co. v. Jeroloman,* 139 N. Y. 14 (34 N. E. 726); *People ex rel. Wood v. Board of Assessors,* 137 N. Y. 201 (33 N. E. 145); 38 Corpus Juris 574. This is particularly true since the amendment to the statute, making a suit for mandamus triable as an equitable action. Code Supplement, 1913, Section 4341.

We are of the opinion that the plaintiff has waived the right to claim error, either in the assessment and classification or in computation from applying a wrong levy. *Griswold Land & Credit Co. v. County of Calhoun,* 198 Iowa 1240; *Lamont Sav. Bank v. Luther,* 200 Iowa 180; *Security Sav. Bank v. Carroll,* 131 Iowa 605; *Reed v. City of Cedar Rapids,* 138 Iowa 366; 26 Ruling Case Law 452.

The case is not within the rule of *Lauman v. County of Des Moines,* 29 Iowa 310, where there was no authority to levy or collect the tax, or *Commercial Nat. Bank v. Board of Supervisors,* 168 Iowa 501, where the statute under which the tax was levied was void, or our other like cases cited by plaintiff. *Richards v. Wapello County,* 48 Iowa 507; *Iowa R. L. Co. v. Woodbury County,* 64 Iowa 212; *Eyerly v. Jasper County,* 72 Iowa 149; *Iowa Nat. Bank v. Murrow* (Iowa), 133 N. W. 769 (not officially reported); *Rood v. Board of Supervisors,* 39 Iowa 444; *Reed v. City of Cedar Rapids,* 138 Iowa 366; *Woodbine Sav. Bank v. Tyler,* 181 Iowa 1389.

The questions discussed were not presented in *Great Western Acc. Ins. Co. v. Martin,* 183 Iowa 1009, or *Iowa Life Ins. Co. v. Board of Supervisors,* 190 Iowa 777.

While the tax for 1921 has not been paid, the case as to that tax is, nevertheless, within the principles which have been discussed.

On the plaintiff's appeal, the judgment is—*Affirmed.* On the defendants' appeal, it is—*Reversed.*

DE GRAFF, C. J., and EVANS and STEVENS, JJ., concur.