## MAY COAL & GRAIN CO. v. KANSAS CITY, MO.

### No. 9913.

Circuit Court of Appeals, Eighth Circuit.

Oct. 30, 1934.

Frank Schibsby and George Reinhardt, both of Kansas City, Mo., for appellant.

J. C. Petherbridge, of Kansas City, Mo. (George Kingsley, of Kansas City, Mo., on the brief), for appellee.

Before BOOTH, Circuit Judge, and MUNGER and BELL, District Judges.

BOOTH, Circuit Judge.

This is an appeal from a decree dismissing the bill in a suit in equity brought by appellant, May Coal & Grain Company, against the appellee city to enjoin it from enforcing against plaintiff an ordinance of the city, known as Ordinance No. 3047, passed September 12, 1932, relating to the regulation of retail coal dealers. The ordinance is set out at length in the margin.[1]

The verified bill of complaint alleges that

---

[1] "Be It Ordained by the Council of Kansas City.

"Section 1. That ordinance No. 54,814, passed July 2nd, 1928, be and the same is hereby amended by repealing Section 6-A and enacting a new section in lieu thereof which new section shall read as follows:

plaintiff is a corporation duly organized under the laws of the state of Missouri, and is engaged in the business of a retail merchant of coal and grain at Dodson, Jackson county, Mo., about half a mile south of the corporate limits of defendant city; that plaintiff operates at said point a coal and grain yard, known as the Dodson Yard; that said yard is located upon a railroad switch track; that at said yard plaintiff has an office at which

"Section 6-A: That all persons, firms, corporations or organizations of any kind or nature engaged in the retail sale of coal in Kansas City, shall first secure a license therefor from Kansas City to do so. A retail coal dealer as defined and understood in this section is one who sells and delivers coal in truck loads or wagon load lots to householders, industrial plants or consumers of any kind, except the sale of coal by so-called 'coal peddlers' in quantities of less than 1000 pounds, each, direct to individual consumers and except where coal is sold to recognized and regularly licensed retail coal dealers in car load lots, or to industries, institutions, firms or individuals, which consume the coal themselves and maintain private switch tracks for its unloading, where parties purchase coal in car load lots and resell or distribute it to employees, friends, relatives or others, such sale is to be construed as retail business and requires a regular license therefor.

"No license shall be issued to any person, firm or corporation who does not possess and own proper equipment for the operation of such retail business within the limits of the city; such equipment shall consist of a coal yard or station with reasonable storage facilities therefor, an office and wagon scale of at least five-ton capacity. Under such license the licensee may operate one coal yard or station, also a separate uptown office, if desired, where orders for coal may be taken. No license shall be issued to any person, firm or corporation to retail coal within the limits of the city direct from coal yards, stations or mines located outside of the city limits. All coal retailed within the city limits must be delivered from a coal yard or station, as herein defined, located within the limits of Kansas City.

"Qualified licensees, operating under the provisions of this section, shall supply, without discrimination to the best of their ability, the regular day to day demand for coal.

"The license fees herein required shall be $100.00 for one year, or $50.00 for six months, payable in advance. All licenses issued under this section shall expire on January 4th or July 4th of each year, and no license shall be issued for less than a period of six months.

"A separate license shall be obtained for each coal yard or station operated or maintained for the retail sale of coal.

"The license shall, at all times, be available for inspection by license inspectors or to the public and should licensee desire to maintain a separate sales office or additional yards, as above described, a duplicate of the license, under the same number, name and style, shall be issued and so displayed.

"Each truck, wagon or piece of equipment used for the delivery of coal shall display, in a prominent place, the license number of the owner, or employer in plain letters and figures, not less than three inches in height and in such condition that they may be at all times easily distinguishable and readable at least sixty feet away.

"No license shall, under any condition whatsoever, be transferable.

"Every licensee, operating under this section, and delivering coal in wagon-load or truck-load lots or in any quantity, shall correctly weigh said coal and shall furnish to the driver, or person in charge of each load or delivery a ticket, signed by the seller of the coal, showing the gross tare and net weights, and said ticket shall also state the name of the purchaser of such coal, and shall correctly describe the quality, the kind and character of such coal; and the seller's driver or person in charge of each load, or delivery shall, on the delivery of said coal, deliver said ticket to the purchaser.

"Any person, firm, corporation or organization who shall violate any of the provisions of this section, shall be deemed guilty of a misdemeanor and upon conviction therefor, shall be fined in a sum of not less than $25.00 nor more than $100.-00 for each and every offense; each individual sale or transaction of a wagonload or truck-load or any less quantity, shall constitute a separate offense and shall, upon conviction, be fined as herein provided.

"The foregoing ordinance is hereby approved and its passage recommended.

"Form approved:

"Authenticated as passed this September 12th, 1932.

"[Seal]

H. F. McElroy,
City Manager,

J. C. Petherbridge,
Asst. City Counselor.

Bryce B. Smith, Mayor,

Chas. W. Regan, City Clerk,
By L. C. Nave,
Deputy City Clerk."

it receives orders for coal; that from said coalyard plaintiff sells coal to customers in defendant city and surrounding territory, and delivers the coal by means of trucks which are owned by the plaintiff.

The complaint further alleges the passage of the ordinance by the city; that the city has refused the tender of fees by plaintiff for a retail coal dealer's license, and has refused to issue a license to plaintiff for said yard; that the city has caused the arrest and imprisonment of several of plaintiff's employees, citizens of the United States and of the state of Missouri, who drive plaintiff's trucks and deliver coal in the city, on the charge of violation of the ordinance; that the city threatens to continue the arrest of said drivers as often as they shall enter the city with coal from plaintiff's yard; that, by the terms of said ordinance, the delivery of each truckload of coal constitutes a separate offense, the punishment for which is a fine of $25 to $100; that plaintiff often delivers many truckloads a day in said city.

The complaint further alleges: "That there are local retail coal merchants in defendant city selling coal to customers in defendant city; that said ordinance was designed and passed, and is being enforced, and will continue to be enforced, for the purpose of a complete embargo to protect the said local dealers from the competition of plaintiff and other non-resident coal merchants, and to render such competition impossible by preventing coal from entering defendant city except by way of wholesale trade, and thereby give the said local coal merchants a monopoly upon the retail coal business in defendant city; that said ordinance carries such purpose upon its face."

The complaint further alleges that the enforcement of the ordinance violates the provisions of the Fourteenth Amendment to the Constitution of the United States, in that it abridges the privileges and immunities of citizens of the United States, including plaintiff; in that it deprives plaintiff of his property without due process of law; and in that it denies to plaintiff the equal protection of the laws.

Motion was made by defendant city to dismiss the bill on various jurisdictional grounds.

The heading of the motion is as follows: "Now comes the defendant herein and appearing specially and for the purpose of this motion only, moves the court to dismiss plaintiff's bill of complaint, because this court has no jurisdiction of the parties or of the subject matter of this action, to-wit."

Then follows a statement of seven grounds.

The motion concludes:

"Wherefore, defendant prays that the alleged bill of complaint be dismissed.

"George Kingsley,
"City Counselor.
"J. C. Petherbridge,
"Assistant City Counselor.
"Attorneys for Defendant appearing specially for the purpose of this motion only."

Affidavits were submitted in behalf of the respective parties. It appeared from these affidavits that, since the commencement of the suit, plaintiff had purchased a yard within the city limits and had taken out a license therefor.

It appeared also from the affidavits that, if plaintiff may not sell coal from the Dodson Yard to the residents of Southeastern Kansas City, the yard will be unprofitable, 85 per cent. of the business of that yard being with residents of Southeastern Kansas City; that the capital invested by plaintiff in said yard was $27,000; that the profits were about $7,000 yearly; that the ground of the refusal of the city to issue a license to plaintiff for the Dodson Yard was that the yard lay beyond the city limits.

There was dispute in the affidavits whether in the past the truck drivers from the Dodson Coal Yard were furnished with a ticket for each load, to be delivered to the customer, showing the kind and quality of the coal being hauled and the gross and net weight, and the name of the purchaser.

In said affidavits, plaintiff professed willingness to comply with all provisions of the ordinance except removal of its coalyard to a point within the city limits, and also a willingness that the inspector of weights from Kansas City should have access to the scales at the Dodson Yard at all times.

The trial court, being under the impression that, by reason of the establishment of the second yard by plaintiff, the controversy as to the first yard had become moot, dismissed the bill on the ground that one could not secure benefits under an ordinance and at the same time attack it as unconstitutional.

On a petition for rehearing, it was made clear that the controversy had not become moot, but that plaintiff intended, if possible, to maintain and operate the first yard as well as the second.

No answer to the bill of complaint was interposed. The court denied the petition for rehearing. The present appeal followed.

The question of the jurisdiction of the trial court, raised in that court by defendant's motion to dismiss the bill, the defendant appearing specially for the purpose of the motion only, is, in our judgment, the only question properly before this court on the appeal.

No general appearance was made in the trial court by the defendant.

No consent was given by the parties that the case should be determined by that court upon the merits.

The decree entered in that court is consonant with these conclusions. It reads:

"Now on this 25th day of November, 1932, the Court, being fully advised in the premises, does sustain defendant's motion to dismiss the bill herein.

"Wherefore, it is adjudged and decreed that plaintiff's bill of complaint be and it is hereby dismissed."

■ It will not be assumed that the court dismissed the case upon the merits when the question of jurisdiction was the only one properly before it.

■ It is true that some of the affidavits submitted contain statements which might relate to the merits of the case as well as to the jurisdiction of the court; but we assume that the trial court considered them only so far as they related to the question of jurisdiction, which, as we view the record, was the only question presented for determination.

Such being the state of the record, we confine ourselves to the question whether the trial court erred in dismissing the bill of complaint for lack of jurisdiction.

A review of a few of the pertinent cases will, we think, determine the question.

Columbus Ry., Power & Light Co. v. Columbus, 249 U. S. 399, 39 S. Ct. 349, 63 L. Ed. 669, 6 A. L. R. 1648, involved a suit by the power company to enjoin certain ordinances of the city of Columbus.

By motions, the question of jurisdiction of the court and the question of the merits of the case were presented. The trial court held that the federal court had no jurisdiction; also that the bill did not state facts constituting a valid cause of action in equity, and should be dismissed for want of equity.

The Supreme Court passed upon both questions. As to the question of jurisdiction it said (page 406 of 249 U. S., 39 S. Ct. 349, 351): "We are of opinion that there was jurisdiction in the District Court to entertain the bill as it presented questions arising under the Fourteenth Amendment to the federal Constitution not so wholly lacking in merit as to afford no basis of jurisdiction. Jurisdiction does not depend upon the decision of the case, and should be entertained if the bill presents questions of a character giving the party the right to invoke the judgment of a federal court. We think the elaborate and careful opinion of the District Judge of itself shows that substantial questions arising under the federal Constitution were presented by the bill and that the court had jurisdiction."

Binderup v. Pathé Exchange, 263 U. S. 291, 44 S. Ct. 96, 68 L. Ed. 308, involved an action for damages under section 7 of the Anti-Trust Act (26 Stat. 210 [15 USCA § 15 note]). The defendant answered. At the trial, after the opening statement for plaintiff was made, defendant moved for a directed verdict on the ground that the petition and opening statement failed to show facts sufficient to constitute a cause of action under said act. Verdict was directed, and judgment was entered dismissing the case. In a memorandum, the trial court stated that the motion was granted upon the grounds: (1) That the complaint did not show that the court had jurisdiction; (2) that the complaint did not show any combination or conspiracy.

The Circuit Court of Appeals, 280 F. 301, affirmed the judgment for want of jurisdiction in the trial court.

On appeal the Supreme Court said (page 305 of 263 U. S., 44 S. Ct. 96, 98): "Jurisdiction is the power to decide a justiciable controversy, and includes questions of law as well as of fact. A complaint, setting forth a substantial claim under a federal statute presents a case within the jurisdiction of the court as a federal court, and this jurisdiction cannot be made to stand or fall upon the way the court may chance to decide an issue as to the legal sufficiency of the facts alleged any more than upon the way it may decide as to the legal sufficiency of the facts proven. Its decision either way upon either question is predicated upon the existence of jurisdiction, not upon the absence of it. Jurisdiction, as distinguished from merits, is wanting only where the claim set forth in the complaint is so unsubstantial as to be frivolous, or, in other words, is plainly without color of merit."

Mosher v. City of Phœnix, 287 U. S. 29, 53 S. Ct. 67, 77 L. Ed. 148, involved suits for an injunction. The trial court and the Circuit Court of Appeals dismissed the bills for lack of jurisdiction. The Supreme Court on certiorari said (page 30 of 287 U. S., 53 S. Ct. 67) : "There is no diversity of citizenship, and jurisdiction depends upon the presentation by the bills of complaint of a substantial federal question. Jurisdiction is thus determined by the allegations of the bills and not by the way the facts turn out or by a decision of the merits."

And again (page 32 of 287 U. S., 53 S. Ct. 67, 68) : "We are of the opinion that the allegations of the bills of complaint, that the city acting under color of state authority was violating the asserted private right secured by the Federal Constitution, presented a substantial federal question, and that it was error of the District Court to refuse jurisdiction."

Levering & Garrigues Co. v. Morrin, 289 U. S. 103, 53 S. Ct. 549, 77 L. Ed. 1062, was a suit for an injunction. The test of jurisdiction was thus laid down (page 105 of 289 U. S., 53 S. Ct. 549, 550) : "Whether an objection that a bill or a complaint fails to state a case under a federal statute raises a question of jurisdiction or of merits is to be determined by the application of a well settled rule. If the bill or the complaint sets forth a substantial claim, a case is presented within the federal jurisdiction, however the court, upon consideration, may decide as to the legal sufficiency of the facts alleged to support the claim. But jurisdiction, as distinguished from merits, is wanting where the claim set forth in the pleading is plainly unsubstantial. * * * And the federal question averred may be plainly unsubstantial either because obviously without merit, or 'because its unsoundness so clearly results from the previous decisions of this court as to foreclose the subject and leave no room for the inference that the questions sought to be raised can be the subject of controversy.' "

In this case the Supreme Court held, after reviewing a number of cases, that the trial court was without jurisdiction, saying (page 108 of 289 U. S., 53 S. Ct. 549, 551) : "It follows that the federal district court was without jurisdiction because the federal question presented was plainly unsubstantial, since it had, prior to the filing of the bill, been foreclosed by the two previous decisions last named, and was no longer the subject of controversy."

E. C. Atkins & Co. v. Dunn (C. C. A.) 28 F.(2d) 5, involved an injunction suit on an alleged cause of action arising under the Constitution of the United States. The trial court dismissed the bill. The Circuit Court of Appeals for the Seventh Circuit reversed the judgment, saying (page 7 of 28 F.(2d) : "But jurisdiction does not depend upon whether the bill makes a claim that is well founded. Usually if the bill or declaration makes a claim that if well founded is within the jurisdiction of the court it is within that jurisdiction whether well founded or not. * * * The logic of the general rule as to jurisdiction is obvious and the case should be decided upon the merits unless the want of jurisdiction is entirely clear.' Hart v. Keith Vaudeville Exchange et al., 262 U. S. 271, 43 S. Ct. 540, 67 L. Ed. 977."

City of Louisville v. Louisville R. Co. (C. C. A.) 39 F.(2d) 822, involved a suit for an injunction against alleged confiscatory rates fixed by the city. The question of jurisdiction was raised. On appeal from the decree for plaintiff, the Circuit Court of Appeals on the question of jurisdiction said (page 824 of 39 F.(2d) : "If needed, another justification for the retention of jurisdiction is found in the fact that, upon the present record, the complainant below honestly urges a real and substantial claim of violation of the Federal Constitution. The contention that the city is exercising delegated state powers, either of rate control or in the enforcement of franchise conditions, is urged in good faith, and this claim is not so wholly lacking in merit as to afford no basis for jurisdiction of the federal courts, whether the contention be ultimately sustained or denied, or whether in fact, the federal question be decided at all."

To the same effect see Hays v. Port of Seattle, 251 U. S. 233, 40 S. Ct. 125, 64 L. Ed. 243; South Covington & C. St. Ry. Co. v. Newport, 259 U. S. 97, 42 S. Ct. 418, 66 L. Ed. 842; Moore v. New York Cotton Exchange, 270 U. S. 593, 46 S. Ct. 367, 70 L. Ed. 750, 45 A. L. R. 1370; Harrison v. Chamberlin, 271 U. S. 191, 46 S. Ct. 467, 70 L. Ed. 897; Corrigan v. Buckley, 271 U. S. 323, 46 S. Ct. 521, 70 L. Ed. 969; Hopkins v. Southern Cal. Tel. Co., 275 U. S. 393, 48 S. Ct. 180, 72 L. Ed. 329; Swift & Co. v. United States, 276 U. S. 311, 48 S. Ct. 311, 72 L. Ed. 587; Central Kentucky Natural Gas Co. v. Railroad Commission, 290 U. S. 264, 54 S. Ct. 154, 78 L. Ed. 307; City of Toledo v. Toledo Rys. & Light Co. (C. C. A.) 259 F. 450; Walker Grain Co. v. South-

western Telegraph & Telephone Co. (C. C. A.) 10 F.(2d) 272; Steidle v. Reading Co. (C. C. A.) 24 F.(2d) 299; Jefferson v. Gypsy Oil Co., 27 F.(2d) 304 (C. C. A. 8); Central Kentucky Nat. Gas Co. v. Railroad Commission (D. C.) 37 F.(2d) 938; Morton G. Thalhimer, Inc., v. Florance (C. C. A.) 58 F.(2d) 23.

An examination of the complaint in the light of the foregoing authorities has led us to the conclusion that the allegations therein are "not so wholly lacking in merit as to afford no basis for jurisdiction." We think the court erred in dismissing the bill.

The trial court, in entertaining the motion to dismiss, being bound by the limitations which confined the motion to jurisdictional questions, this court, upon appeal, is not at liberty to disregard the limitations and dismiss the bill upon the merits. See Wichita R. & Light Co. v. Public Utilities Commission, 260 U. S. 48, 43 S. Ct. 51, 67 L. Ed. 124.

The decree is reversed, with instructions for further proceedings not inconsistent with the foregoing opinion.