**HAMMERSTROM, County Treasurer, et al.**
**v. TOY NAT. BANK OF SIOUX CITY,**
**IOWA, and five other cases.**

Nos. 10282–10284, 10287–10289.

Circuit Court of Appeals, Eighth Circuit.
Feb. 20, 1936.

Edwin J. Stason, of Sioux City, Iowa, for Toy Nat. Bank of Sioux City, Iowa, and Iowa Joint Stock Land Bank of Sioux City, Iowa.

Peter S. Rask, of Minneapolis, Minn., for Live Stock Nat. Bank of Sioux City, Iowa.

Charles M. Stilwill, of Sioux City, Iowa (Alfred R. Strong and M. E. Rawlings, both of Sioux City, Iowa, on the brief), for Van W. Hammerstrom, County Treasurer, et al.

Before STONE, SANBORN, and BOOTH, Circuit Judges.

BOOTH, Circuit Judge.

There are here three appeals by the defendants (in each case the county treasurer and board of supervisors of Woodbury county, Iowa), and three cross-appeals by the respective plaintiffs (two national banks and a federal joint stock land bank) from judgments entered respectively for plaintiffs in three actions brought to recover taxes paid on the shares of the capital stock of the banks, alleged to have been wrongfully and illegally assessed and collected from the respective plaintiffs, for

various years specified in the respective complaints.

The three actions were consolidated for trial in the United States District Court for the Northern District of Iowa; and by stipulation of the parties and order of court are to be heard and determined in this court upon a combined transcript of record covering the three causes.

Demurrers to the complaints were overruled by District Judge Scott. See Toy National Bank v. Nelson (D.C.) 38 F.(2d) 261.

The consolidated cause was thereafter tried by Circuit Judge Woodrough upon amended and substituted pleadings, together with voluminous evidence. A jury was duly waived. The rulings of Judge Scott were held to be the law of the case and were substantially embodied in the findings made. See Toy National Bank v. Smith (D.C.) 8 F.Supp. 638.

Judgment was entered for plaintiff in each case, but for an amount less than that prayed for. Hence the appeals by defendants and cross-appeals by plaintiffs.

The complaints allege, and the contention of plaintiffs in this court is, that the taxes were assessed and levied in violation of section 5219, Revised Statutes of the United States, as amended (12 U.S. C.A. § 548), and of the equal protection clause of the Constitution of the United States. Section 5219 (12 U.S.C.A. § 548) reads in part as follows:

"§ 548. *State Taxation.* The legislature of each State may determine and direct, subject to the provisions of this section, the manner and place of taxing all the shares of national banking associations located within its limits. The several States may (1) tax said shares, or (2) include dividends derived therefrom in the taxable income of an owner or holder thereof, or (3) tax such associations on their net income, or (4) according to or measured by their net income, provided the following conditions are complied with:

"1. (a) The imposition by any State of any one of the above four forms of taxation shall be in lieu of the others, except as hereinafter provided in subdivision (c) of this clause.

"(b) In the case of a tax on said shares the tax imposed shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such State coming into competition with the business of national banks: Provided, That bonds, notes, or other evidences of indebtedness in the hands of individual citizens not employed or engaged in the banking or investment business and representing merely personal investments not made in competition with such business, shall not be deemed moneyed capital within the meaning of this section."

Among the defenses set up in the answers and contended for here by defendants are: (a) That the United States District Court had no jurisdiction to try the case; (b) that the taxes were paid voluntarily; (c) that plaintiffs failed to avail themselves of the administrative remedy (provided by the state statutes) by complaint to the local board of review; (d) that the money collected was distributed by the county treasurer before demand for refund was made; (e) that there was no intentional discrimination by the taxing officials.

The findings of the trial court (abbreviated) are set out in the margin.[1]

[1] Abbreviated Findings of Fact.

"I. The plaintiffs Toy National Bank and Live Stock National Bank, both of Sioux City, Iowa, are national banking associations, duly organized and existing under the Statutes of the Congress of the United States, relating to national banks, and were so organized and existing during all of the years for which the taxes in question are in controversy; the Iowa Joint Stock Land Bank was organized prior to 1923, and is still existing under an Act of Congress of the United States, entitled, 'The Federal Farm Loan Act' [39 Stat. 360].

"II. The defendant, County of Woodbury, was and is a municipal corporation, organized and existing under the laws of the State of Iowa; the defendant F. Price Smith, is the duly elected and qualified County Treasurer of said County; the remaining defendants are the present members of the Board of Supervisors of Woodbury County, Iowa. * * *

"IX. That under the laws of the State of Iowa, Moneys and Credits were taxed at the rate of five mills on the dollar for the year 1923, and six mills on the dollar for the years 1924 to 1931, inclusive.

"X. That the shares of the Plaintiff banks were taxed at the Consolidated Levy Rate from 1923 to 1931 inclusive.

"XI. That during the years in question, from 1923 to 1931, inclusive, the Consolidated Levy Rate in each year was applied to a sum equal to one-fourth of the

We think the United States District Court had jurisdiction to try the case. The allegations of the complaints are controlling. Levering & G. v. Morrin, 289 U. S. 103, 53 S.Ct. 549, 77 L.Ed. 1062; Mosher v. Phoenix, 287 U.S. 29, 53 S.Ct. 67, 77 L.Ed. 148; Binderup v. Pathe Exchange, 263 U.S. 291, 305, 44 S.Ct. 96, 68 L.Ed. 308; South Covington & C. St. Ry. Co. v. Newport, 259 U.S. 97, 42 S.Ct. 418, 66 L.Ed. 842; Columbus Ry., Power & Light Co. v. Columbus, 249 U.S. 399, 406, 39 S. Ct. 349, 63 L.Ed. 669, 6 A.L.R. 1648; Hopkins v. Walker, 244 U.S. 486, 37 S.Ct. 711, 61 L.Ed. 1270; Taylor v. Anderson, 234 U. S. 74, 34 S.Ct. 724, 58 L.Ed. 1218; St.

Capital, Surplus and Undivided Profits of plaintiffs, less the cost of real estate owned by the plaintiffs, and by reason of this method of taxation, the plaintiffs herein paid on their corporate stocks, respectively, a tax from five to seven times greater than Moneys and Credits within Woodbury County, Iowa, were taxed. * * *

"XII. During the years 1923 to 1931, inclusive, there was assessed in Woodbury County, Iowa, as moneys and credits, the sum of approximately $12,000,000.00 in each year, of which approximately $2,000,000.00 was assessed for the county outside the city limits of Sioux City, and there was applied to all these moneys and credits so assessed the Moneys and Credits rate of five mills in 1923, and six mills for the years 1924 to 1931, inclusive.

"That of the moneys and credits so assessed as moneys and credits, and to which was applied the moneys and credits rate of five mills in 1923 and six mills in the remaining years, there was a substantial sum of such moneys and credits in active substantial competition with the normal business of the Iowa Joint Stock Land Bank during each year, in controversy. That of the moneys and credits so assessed as moneys and credits and to which was applied the moneys and credits rate of five mills in 1923 and six mills in the remaining years, there was a substantial sum of such moneys and credits in active substantial competition with the normal business of the Toy National Bank during the year 1928. That of the moneys and credits so assessed as moneys and credits and to which was applied the moneys and credits rate of five mills in 1923 and six mills in the remaining years, there was a substantial sum of such moneys and credits in active substantial competition with the normal business of the Live Stock National Bank during the year 1929. * * *

"XIV. Neither the state board of review in prescribing forms for the assessment of intangible property, nor the county auditor in preparing blanks for the assessor, made provision by blank spaces to be filled in, or by column headings, for moneyed capital of the taxpayer employed in competition with national banks.

"XV. That the assessor and his deputies found no moneyed capital in competition with national banks.

"XVI. That the shares of plaintiffs' stock, for the years 1923 to 1931, inclusive, were assessed between the dates, and not earlier than April 2nd, and as late as April 30th. That the work of the Board of Review was completed before the first day of June of each year, as required by Statute; that the assessments within the City of Sioux City were not completed by the assessor until on or after the 20th of April in each of the years in controversy, and that after the assessment was completed, the assessor removed assessment roll sheets from their bindings, there being in his possession one copy of each assessment roll, and proceeded to arrange the rolls alphabetically, according to the names of taxpayers, which process requires approximately ten days; that, thereafter, the assessment rolls were bound into volumes.

"That the said assessment books thus prepared in the assessor's office from the original assessment rolls are not completed by the said assessor until after the Board of Review in each of the years had adjourned.

"XVII. The assessment of the corporate stock of plaintiff Toy National Bank by the taxing officials of Woodbury County, Iowa, during the year 1928, at the consolidated levy rate was discriminatory as against the plaintiff Toy National Bank in that other moneyed capital in substantial amounts was employed by persons and corporations in loans secured by mortgages upon improved real estate and was in active competition with the normal business of the plaintiff, Toy National Bank.

"[Similar findings as to the other plaintiffs]. * * *

"Such discrimination was systematic, intentional and in violation of the provisions of section 5219 of the United States Revised Statutes, 12 U.S.C.A. § 548.

"XVIII. As the result of the assessment thus made by the assessors, the Toy National Bank paid, for each of the years in controversy, the following taxes: [amounts set out]. * * *

"XIX. That payment of Toy National Bank made September 30, 1924, and the payment made in 1929 were evidenced by County Treasurer's Tax Receipts which bore upon the face of said receipts

Paul, M. & M. Ry. Co. v. St. Paul & N. P. R. Co., 68 F. 2 (C.C.A.8); see May Coal & Grain Co. v. Kansas City, 73 F.(2d) 345 (C.C.A.8).

While section 7235 of the Iowa Code is very important in the litigation, the basis of the actions is a violation of a fed-eral statute and of the Fourteenth Amendment. Iowa-Des Moines National Bank v. Bennett, 284 U.S. 239, 52 S.Ct. 133, 76 L.Ed. 265; see Mosher v. Phoenix, supra; First National Bank v. Williams, 252 U.S. 504, 40 S.Ct. 372, 64 L.Ed. 690; Devine v. Los Angeles, 202 U.S. 313, 26 S.Ct. 652,

the stamp of the County Treasurer 'Paid Under Protest.'

"XX. The Iowa Joint Stock Land Bank, as the result of the assessment thus made by the assessor, for the years 1923, 1924, and 1925, paid the following taxes: [amounts set out]. * * *

"XXI. That the payment made by the Iowa Joint Stock Land Bank in 1924 was evidenced by the County Treasurer's Tax Receipts which bore upon the face of said receipts the stamp of the County Treasurer 'Paid Under Protest'; and the payment made in 1926 was evidenced by the County Treasurer's Tax Receipt which bore upon the face of said receipt the stamp of the County Treasurer 'Paid Under Protest'; and accompanying such payment was a formal letter of protest duly received and acknowledged by the Deputy County Treasurer on the date of said payment.

"XXII. That as a result of the assessment thus made by taxing officials, the Live Stock National Bank paid, for each of the years in controversy, the following moneys as taxes: [amounts set out]. * * *

"XXIV. On the 16th day of March, 1929, the Toy National Bank made written demand upon the County Treasurer, and upon the Board of Supervisors, and the members thereof, for a refund of the taxes paid for the years 1923 to 1928, inclusive, in the sum of $40,292.83, claiming that the taxes imposed and exacted were in violation of the terms and conditions of section 5219 of the United States Revised Statutes; * * * That the assessment was made in such manner as not to permit the stockholders to deduct their individual indebtedness as others were permitted to do, and that payment was made under protest, and the demand for refund was refused.

"XXV. On the 16th day of March, 1929, the Iowa Joint Stock Land Bank made written demand upon the County Treasurer, and upon the Board of Supervisors, and the members thereof, for a refund of the taxes paid for the years 1923 to 1928, inclusive, in the sum of $27,-733.97, claiming that the taxes imposed and exacted were in violation of the terms and conditions of section 5219 of the United States Revised Statutes; * * * That the assessment was made in such manner as not to permit the stockholders to deduct their individual indebtedness, as others were permitted to do, and that payment was made under protest, and the demand for refund was refused.

"XXVI. That on the 19th day of September, 1932, the plaintiff Live Stock National Bank caused to be served upon the County Treasurer of Woodbury County, and upon the Chairman of the Board of Supervisors of Woodbury County, Iowa, a written demand for refund of taxes paid for the years 1927 to 1931, inclusive, in the sum of $15,593.25, and that the taxes assessed and paid were illegal, for the reason that the rate was greater than the rate assessed upon other moneyed capital in the hands of individual citizens; That the assessment was made and exacted contrary to law; that the assessment was made in such manner as not to permit the stockholders to deduct their individual indebtedness as other persons were permitted to do. * * *

"XVIII. [XXVIII]. That all of the tax payments made by plaintiffs were made without any immediate threat of distraint or execution to enforce collection thereof."

"Conclusions of Law.

"I. The actions are of a civil nature, arising under the Constitution of the United States, the laws of Congress of the United States, the Constitution of the State of Iowa, and a Federal question is involved in each case, and the cause of action is within the Court's jurisdiction.

"II. The remedy afforded by the said section 7235 of the Iowa Code is a statutory remedy afforded the taxpayer who has paid taxes found to be illegal. No such remedy existed at common law.

"III. Section 7235 of the Iowa Code, providing for the refund of taxes illegally exacted or paid, does not require involuntary payment on the part of the taxpayer in order to entitle him to a refund, neither does it require that protest be made at the time of payment.

"IV. Section 7235 of the Iowa Code, providing for the refund of taxes illegally exacted or paid, does not require that the taxpayer shall first make complaint to the local board of review in order to be entitled to such refund.

"V. That the plaintiffs were not required to exhaust some statutory administra-

50 L.Ed. 1046; Northern Pac. Ry. v. Soderberg, 188 U.S. 526, 23 S.Ct. 365, 47 L.Ed. 575; State of Tennessee v. Union & Planters' Bank, 152 U.S. 454, 14 S.Ct. 654, 38 L.Ed. 511; Cooke v. Avery, 147 U.S. 375, 13 S.Ct. 340, 37 L.Ed. 209.

The motion by plaintiffs for judgment on the pleadings on account of alleged informalities in the answers is, we think, without substantial merit; the answers were at all times subject to amendment, if necessary, and the trial court treated them as sufficient. The issues were clearly defined.

By motion for judgment, and by requested findings and conclusions, duly and timely made, defendants brought to the attention of the trial court the alleged defenses that payments of the taxes were voluntarily made by plaintiffs, and that such payments were made without first ex-

hausting the administrative remedy provided by the state statute. In the interest of economy these should be taken up before the questions touching the merits.

The two defenses are so closely allied in the case at bar that they will be treated together.

Payments were made by the several banks (plaintiffs) of the taxes for each of the years for which recovery is now sought before said taxes became delinquent: by the Toy National Bank for the years 1923 to 1928, inclusive; by the Live Stock National Bank for the years 1927 to 1931, inclusive; by the Iowa Joint Stock Land Bank for the years 1923 to 1925, inclusive.

The treasurer's tax receipt for taxes paid by the Toy National Bank for the last half of the 1923 taxes, and the receipt of March 12, 1929, contain the Treasurer's stamp thereon reading: "Paid Under Pro-

tive remedy as a condition precedent to the maintenance of this action.

"VI. Section 6988 Code of Iowa 1927, authorizes those listing moneys and credits for taxation to deduct the gross amount of all debts in good faith owing by them. The assessment of national bank shares under the Iowa statute without permitting the shareholders to deduct from their assessed value the amount of bona fide indebtedness, while in the case of other moneyed capital in substantial competition therewith improperly assessed at the moneys and credits rate deduction for debts has been allowed, results in discrimination forbidden by section 5219, 12 U.S.C.A. § 548.

"VII. The Iowa Joint Stock Land Bank is neither a bank nor a loan and trust company. Its corporate stock should therefore have been assessed under section 7008 of the Iowa Code, at the same rate as moneys and credits were assessed, and that any assessment at any other rate was illegal and void.

"VIII. The failure of the assessor of Woodbury County, Iowa, to assess moneyed capital in competition with the plaintiffs, which failure was contributed to by the failure of the State Board of Review and the County Auditor to require the assessment of such moneyed capital at the same rate as they imposed upon the plaintiffs, was in violation of the terms and conditions of section 5219 of the United States Revised Statutes, was illegal and void, and the taxes exacted and paid were the direct result of an intentional, systematic and deliberate discrimination against the plaintiffs.

"IX. The plaintiffs are not estopped by reason of the fact that the taxes pa'' by

them have been disbursed by defendant County Treasurer to the different municipal corporations of the County and State for whom the taxes were collected, neither are the plaintiffs barred by laches or acquiescence against the recovery of the same.

"X. That the tax, as assessed by the taxing officers of Woodbury County, Iowa, required the plaintiffs and their stockholders to bear an undue and unjust proportion of the burden of taxation within the taxing district, and was in violation of section 1 of the Fourteenth Amendment to the Constitution of the United States, in that it deprived plaintiffs and their stockholders of the equal protection of the law.

"XI. There is due to the plaintiff Toy National Bank from the defendant Woodbury County, the sum of $4,205.46 and it is entitled to judgment therefor against said County.

"XII. There is due to the Iowa Joint Stock Land Bank from the defendant Woodbury County the sum of $20,925.70 and it is entitled to judgment therefor against said County.

"XIII. There is due to the Live Stock National Bank from the defendant Woodbury County, the sum of $5,508.56 and it is entitled to judgment therefor against said County.

"XIV. That all of the tax payments made by plaintiffs were made without any immediate threat of distraint or execution and, therefore, recovery of interest thereon should be denied.

"XV. The Defendant, Woodbury County, is adjudged to pay the costs of these actions."

test." A similar notation appears upon the receipts issued to the Iowa Joint Stock Land Bank for taxes paid in 1924 and in 1926.

The undisputed evidence was to the effect that a custom existed of affixing such stamp indorsement upon a tax receipt on request of the taxpayer without requiring any reason to be stated.

In February, 1923, the Toy National Bank, in making its return to the assessor, attached thereto a statement to the effect that competing capital should be taxed on the same basis and that bank capital should not be discriminated against. A similar statement was affixed to the return of the Iowa Joint Stock Land Bank on the same day by the same man who was an officer of both companies.

The Iowa Joint Stock Land Bank in 1926 on its tax statement called attention to the fact that it was not a bank of deposit but a farm loan company, and should be taxed at the 6-mill rate. This claim was called to the attention of the assessor, and a correction was made.

This same company also addressed a letter to the county treasurer when transmitting payment for one year's tax, stating that it reserved the right to take steps to collect the same if it should so elect. Demands for refunds were made by the Toy National Bank and by the Iowa Joint Stock Land Bank in 1929; and by the Live Stock National Bank in 1932.

Such appears to be the evidence in the record touching the matter of voluntary or involuntary payment.

The allegation in the complaint of the Toy National Bank is as follows: "That the said taxes were paid by the plaintiff under duress and involuntarily in that they were paid to avoid penalties and a high rate of interest, and in order to avoid injury to the credit and standing of the plaintiff as a national banking institution."

Similar allegations were included in the complaint of the Live Stock National Bank and of the Iowa Joint Stock Land Bank.

The trial court found (finding XVIII [XXVIII]): "That all of the tax payments made by plaintiffs were made without any immediate threat of distraint or execution to enforce collection thereof."

At common law, as a general rule, a voluntary payment of taxes could not be recovered back. In the case of Union P. Railroad Co. v. Dodge County Commis-sioners, 98 U.S. 541, 543, 25 L.Ed. 196, the court in its opinion quoted with approval from the case of Wabaunsee County Com'rs v. Walker, 8 Kan. 431, as follows: "Where a party pays an illegal demand with a full knowledge of all the facts which render such demand illegal, without an immediate and urgent necessity therefor, or unless to release his person or property from detention, or to prevent an immediate seizure of his person or property, such payment must be deemed voluntary and cannot be recovered back. And the fact that the party at the time of making the payment files a written protest does not make the payment involuntary."

In Security National Bank of Watertown, S. D. v. Young, 55 F.(2d) 616, 619, 84 A.L.R. 100, this court said:

"It remains to consider whether the taxes paid were involuntary, in the sense that their payment was exacted by coercion and duress. The complaint contains no allegations that any taxing officer was armed with tax warrant or other process, that there was any threat to seize upon any of plaintiffs' property, or cast a cloud upon the title to its property or imprison any of its officers. The only claim of duress or coercion is that the payments involved were made through the coercion and duress of the South Dakota statute. The allegation is that the taxes have been 'paid by said bank under the duress and compulsion of the laws of the State of South Dakota.' It is alleged that the law of South Dakota provided that, if the tax on personal property should not be paid when due, it should be collected through the sheriff, and that, in addition to other large and burdensome fees and mileage chargeable and collectible by the sheriff, there might be added to such taxes a penalty of 15 per cent. of the amount due. To hold that the provisions of the statute constituted a constructive duress or coercion would in effect render the payment of practically all taxes involuntary and subject to be recovered back. As said by the Supreme Court of Virginia in Phillips v. City of Portsmouth, 115 Va. 180, 78 S.E. 651, 655: 'To hold that the imposition of a penalty which is designed to accelerate the prompt payment of taxes, constitutes a duress would be to render the payment of the great bulk of our taxes involuntary and subject to be recovered back.'

"True, it is alleged that the taxes were paid under protest, but this is not suffi-

634

cient to save the payment from being voluntary in the sense which bars a recovery of the taxes paid, if it was not made under any duress, compulsion, or threats, or under the pressure of process immediately available for the forcible collection of the tax"—citing Union P. Railroad Co. v. Dodge County Commissioners, 98 U.S. 541, 25 L.Ed. 196; Gaar, Scott & Co. v. Shannon, 223 U.S. 468, 32 S.Ct. 236, 56 L.Ed. 510; United States v. New York & Cuba Mail S. S. Co., 200 U.S. 488, 26 S.Ct. 327, 50 L.Ed. 569; Chesebrough v. United States, 192 U.S. 253, 24 S.Ct. 262, 48 L. Ed. 432; Steffen v. State, 19 S.D. 314, 103 N.W. 44; Dexter v. Boston, 176 Mass. 247, 57 N.E. 379, 79 Am.St.Rep. 306; Flower v. Lance, 59 N.Y. 603; Williams v. Merritt, 152 Mich. 621, 116 N.W. 386; Oakland Cemetery Ass'n v. Ramsey County, 98 Minn. 404, 108 N.W. 857, 109 N.W. 237, 116 Am.St.Rep. 377.

No federal statute has been cited, and we know of none, which takes the case at bar out of the general rule.

Judge Scott was of the opinion that section 7235 of the Iowa Code, which requires the board of supervisors of a county to direct the county treasurer to refund to a taxpayer any tax or portion thereof found to have been illegally exacted, created an obligation for refund of taxes voluntarily paid, and gave a taxpayer a right to recover taxes illegally assessed, in an action at law. The defendants insist that no such right is afforded by the laws of Iowa. But see Slimmer v. Chickasaw County, 140 Iowa, 448, 118 N.W. 779, 17 Ann.Cas. 1028.

We think it unnecessary to pass upon this question in view of our holding hereafter on another question.

Did the taxpayers avail themselves of the administrative remedy provided?

The state of Iowa by various statutory enactments has provided for the taxation of moneys and credits and shares of national banks. See Code Iowa 1927, §§ 6984, 6985, 6987, 6988, 6992, 6998, 7003 7005, 7006, 7007-a1.

It was held by the trial court that such statutory provisions contravene neither the Fourteenth Amendment to the Constitution of the United States nor section 5219, Revised Statutes of the United States, as amended (12 U.S.C.A. § 548).

The state of Iowa has also provided an administrative remedy to be pursued by the taxpayer to correct an assessment, Code

Supplement 1913, § 1373, which reads as follows:

"Sec. 1373. *Complaint to Board of Review—Appeal.* Any person aggrieved by the action of the assessor in assessing his property may make oral or written complaint thereof to the board of review, which shall consist simply of a statement of the errors complained of, with such facts as may lead to their correction, and any person whose assessment has been raised or whose property has been added to the assessment rolls, as provided in the preceding section, shall make such complaint before the meeting of the board for final action with reference thereto, as provided in said section, and appeals may be taken from the action of the board with reference to such complaints to the district court of the county in which such board holds its sessions, within twenty days after its adjournment. Appeals shall be taken by a written notice to that effect to the chairman or presiding officer of the reviewing board, and served as an original notice. The court shall hear the appeal in equity and determine anew all questions arising before the board which relate to the liability of the property to assessment or the amount thereof, and its decision shall be certified by the clerk of the court to the county auditor, who shall correct the assessment books in his office accordingly. Any officer of a county, city, town, township or school district interested or a taxpayer thereof may in like manner make complaint before said board of review in respect to the assessment of any property in the township, city or town and an appeal from the action of the board of review in fixing the amount of assessment on any property concerning which such complaint is made, may be taken by any of such aforementioned officers. Such appeal is in addition to the appeal allowed to the person whose property is assessed and shall be taken in the name of the county, city, town, township or school district interested and tried in the same manner, except that the notice of appeal shall also be served upon the owner of the property concerning which the complaint is made and affected thereby or person required to return said property for assessment. Upon trial of any appeal from the action of the board of review fixing the amount of assessment upon any property concerning which complaint is made, the court may increase, decrease or affirm the amount of the assessment appealed from."

It is not contended, nor would the record support a contention, that such administrative remedy was pursued by the taxpayers in the case at bar. It is, however, contended (a) that such remedy was inadequate and futile; and (b) that the pursuit of such remedy was unnecessary in view of section 7235 of the Iowa Code 1927, which reads as follows: *"Refunding Erroneous Tax.* The board of supervisors shall direct the treasurer to refund to the taxpayer any tax or portion thereof found to have been erroneously or illegally exacted or paid, with all interest and costs actually paid thereon."

This construction of the statute in question was upheld by Judge Scott, and, by reason of the rule of the law of the case, by Judge Woodrough.

We think these holdings as to the construction of the Iowa statute are erroneous.

Some expressions of opinions in the earlier Iowa cases lend support to such holdings, but the later decisions, by which we are bound, are, as we view them, to the contrary.

This statute has been before the Iowa courts for interpretation in numerous cases. In Commercial Nat. Bank v. Board of Supervisors, 168 Iowa, 501, 150 N.W. 704, 705, Ann.Cas. 1916C, 227, the Supreme Court of Iowa said: "The manifest design of this statute is that the board of supervisors first ascertain whether the taxpayer is entitled to be reimbursed for taxes illegally or erroneously exacted and, if so, the treasurer be directed to repay the same from the several funds to which these have passed. Such was the interpretation given in Iowa Ry. Land Co. v. Woodbury County, 64 Iowa, 212, 19 N.W. 915, where recovery against the county was denied, and this decision was followed in Eyerly v. Jasper County, 72 Iowa, 149, 33 N.W. 609. It is the duty of the treasurer only to repay from the particular funds into which the taxes have gone, and, when necessary, to ascertain by computation the amount to be taken from each. District Township of Spencer v. District Township of Riverton, 56 Iowa, 85, 8 N.W. 784. The result attained is the restoration of the moneys illegally or erroneously paid by the taxpayer and each fund continues as though these had never been collected. The remedy is perfect."

In Lamont Sav. Bank v. Luther, 200 Iowa, 180, 204 N.W. 430, 431, which was a suit to enjoin the collection of bank tax- es, the Supreme Court of Iowa said: "The remedy by appeal is exclusive, and the failure of the person aggrieved by the assessment to appear before the board of review and make complaint waives his right to complain subsequently of any irregularity in the listing and assessment."

In Iowa Nat. Bank v. Stewart, 214 Iowa, 1229, 232 N.W. 445, which was a proceeding in mandamus to compel refund of taxes on shares of bank stock, after appeals to the board of review, after payment under protest, and after demand for refund, the court in an exhaustive opinion covering the statutory enactments and prior decisions held that the complaining taxpayers were required to make their objections to the board of review, though the objections might be made very informally; that the objections could be reviewed on appeal to the District Court and there tried de novo; and again by appeal to the Supreme Court, where the case is triable de novo; that the remedy was adequate and exclusive.

It is true that the decision in the case of Commercial Nat. Bank v. Board of Supervisors, supra, dealt with taxes levied on bank shares under a state statute declared unconstitutional by the Iowa Supreme Court in the case of First National Bank of Estherville v. City Council of Estherville, 150 Iowa, 95, 129 N.W. 475, Ann. Cas.1912D, 534; but the discriminatory provisions in the state statute were subsequently modified by the state Legislature; and the holding of the trial court in the case at bar is that the present provisions of the Iowa statute do not contravene the Constitution of the United States nor the provisions of section 5219, Revised Statutes of the United States, as amended (12 U.S.C.A. § 548).

After the Iowa statute had been amended, it was passed upon by the Supreme Court of Iowa. In Griswold Land & Credit Co. v. Calhoun County, 198 Iowa, 1240, 201 N.W. 11, 12, the court in its opinion said:

"It thus appears that the authority of the board of review is plenary to correct errors in the classification and assessment of property and to increase or diminish the valuation fixed by the assessor. * * *

"The failure of a person aggrieved by the assessment of his property to appear before the board of review and make complaint waives his right to subsequently

complain of any irregularity in the listing and assessment thereof. * * *

"The jurisdiction of the board of supervisors to order a refund of taxes paid is limited to such as have been erroneously or illegally exacted by the county treasurer." See, also, Farmers Ins. Co. v. Linn County, 202 Iowa, 444, 208 N.W. 929.

Federal decisions are in accord.

Plaintiffs cite the case of Munn v. Des Moines National Bank, 18 F.(2d) 269, decided by this court, as supporting their view. It was held in that case under the peculiar facts shown by the record that the Iowa statute did not afford an adequate remedy. Injunction was granted.

But in Nelson v. First National Bank, 42 F.(2d) 30, 31, this court said: "The above remedy of appeal from the assessor to the board of review is purely administrative and would appear to be adequate unless there are peculiar facts showing its inadequacy."

And further, in speaking of the Munn Case, the court said: "Unless we can say broadly that the above difficulties, pointed out in the Munn Case, are inherent in this statutory system of review under all circumstances, that case is not controlling. We think this would be an unwarrantable extension of that decision and that appellees must exhaust this administrative remedy of appeal to the board of review before they can come into court. Such a conclusion determines the case of the First National Bank as to both years (1926 and 1927) here involved. Also, it determines the case of the Security National Bank as to the year 1926, but as to the year 1927, that bank took such appeal, in vain." See, also, First Nat. Bank v. Harrison County, 57 F.(2d) 56 (C.C.A.8).

And in the case of Crawford County Trust & S. Bank v. Crawford County (C.C.A.) 66 F.(2d) 971, which was an action for refund of taxes, plaintiff undertook to set up in its pleading an excuse for not seeking redress through the board of review. This court, after reviewing prior cases, said (66 F.(2d) 971, 977): "The statement amounts to saying there was not sufficient time to ascertain the facts and procure the evidence thereof to present to the board. Such statement is a conclusion. Whether there was such sufficient time, obviously, depends upon the combined effect to be given to or drawn from a set of facts—such as the length of time, the knowledge of appellant as to the various facts entering into the discrimination, the date such knowledge was acquired, the period within which it could have acted, the circumstances surrounding presentation of its evidence to the board, and possibly many others. The pleading should have set forth facts which, if true, would lead to the conclusion pleaded. This was a jurisdictional matter. The existence of jurisdiction must be clearly shown on the face of the petition."

And referring to the case of Knowles v. First Nat. Bank, 58 F.(2d) 232, also from this court, after making a correction therein, this court said (66 F.(2d) 971, 976): "Thus corrected, the Knowles Case is no authority for the proposition that it affects the rule, stated in the Nelson and Munn Cases, that the administrative remedy of protest to the board of review is adequate and a prerequisite to judicial relief unless the facts of the particular case show, as to it, inadequacy."

In view of the foregoing decisions both from the state and federal courts, we think that the complaining taxpayers, under the circumstances existing in the case at bar, must first have exhausted the administrative remedy provided by the state statutes before resorting to the courts; and we do not think section 7235 of the Iowa Code, when properly construed, obviates the necessity of such resort.

We do not find it necessary to hold, and do not hold, that, after having exhausted the administrative remedy provided by the state statute, the taxpayer is further exclusively confined to his remedy in the state courts. After the administrative stage has been passed, the judicial stage is reached; and the question of what particular court shall be called upon to hear the matter depends upon various considerations. See Duluth St. Ry. Co. v. R. R. & Warehouse Comm. (D.C.) 4 F.(2d) 543, affirmed, R. R. & Warehouse Comm. v. Duluth St. Ry. Co., 273 U.S. 625, 47 S.Ct. 489, 71 L.Ed. 807; City Bank Farmers' Trust Co. v. Schnader, 291 U.S. 24, 34, 54 S.Ct. 259, 78 L.Ed. 628. But, until the administrative remedy is exhausted, the complaining taxpayer usually is without standing in either the federal or state courts.

We do not think that the facts in the case at bar, as set forth in the findings, are sufficient to show that there was no administrative remedy, or that the remedy afforded by the state statute (Code Supplement 1913, § 1373) was inadequate or

futile. It is clear that no resort thereto was had or attempted to be had. We think that, under the decisions, both state and federal, such resort, under the circumstances existing in the case at bar, was an indispensable prerequisite to attempted redress through the courts.

Our conclusion is that the trial court in the case at bar erred in not granting the motions of defendants made at the close of all the evidence praying that the several causes be dismissed.

As this conclusion disposes of the several appeals and cross-appeals, we find it unnecessary to discuss the various other questions raised by counsel.

The judgments appealed from are reversed, and the causes remanded, with instructions to dismiss the several petitions.