CITY BANK FARMERS TRUST CO., EXECUTOR, *v.* SCHNADER, ATTORNEY GENERAL OF PENN- SYLVANIA, ET. AL.

No. 84.   Argued November 9, 1933.—Decided January 8, 1934.

*Mr. Henry S. Drinker, Jr.,* with whom *Messrs. Leslie M. Swope, H. Gordon McCouch,* and *Wolcott P. Robbins* were on the brief, for appellant.

*Mr. Wm. A. Schnader,* Attorney General of Pennsylvania, with whom *Mr. Harris C. Arnold,* Deputy Attorney General, was on the brief, for appellees.

By leave of Court, *Mr. Seth T. Cole* filed a brief on behalf of the Tax Commission of New York as *amicus curiae.*

MR. JUSTICE ROBERTS delivered the opinion of the Court.

The appellant, by a bill filed in the District Court for Eastern Pennsylvania, sought to enjoin the appellees, who are officials of the Commonwealth of Pennsylvania, from attempting to impose and collect an inheritance tax. Diversity of citizenship and an amount in controversy exceeding, exclusive of interest, $3,000, were averred. The bill sets forth that Thomas B. Clarke, a citizen and resident of the state of New York, died there in 1931 leaving a will under which appellant qualified as executor; that at and before the time of Clarke's death there was on exhibition in Pennsylvania a collection of paintings owned by him, of the estimated market value at the date of his death of $714,750; that these paintings had been loaned

to the Pennsylvania Museum and School of Industrial Art, a non-profit corporation, so that they might be exhibited in the museum of that institution; that the loan was negotiated orally and was for an indeterminate period, but the pictures were to be returned to Clarke at any time upon his request. The bill then quotes the Act of Assembly of Pennsylvania [1] whereby a transfer inheritance tax of a specified percentage of value is laid upon transfers, by will or the intestate laws, of property located within the Commonwealth, from a decedent not a resident of the Commonwealth at the time of his death; describes the procedure for the collection of the tax, namely, that the Department of Revenue, whenever occasion may require, shall appoint an appraiser to appraise the value of the property, if subject to tax; appraisement shall be made after notice to the interested parties; the appraiser shall report his valuation in writing to the Department of Revenue; whereupon that Department is required to give notice to all interested parties, and any person not satisfied with the appraisement may appeal to the Court of Common Pleas of Dauphin County, which may determine all questions of valuation and the liability of the appraised estate for the tax. The bill recites the appointment of an appraiser, who duly notified the appellant of the proposed date of his appraisement; the making of a return, under protest, pursuant to instructions of the appellee Schnader, enumerating as property within the Commonwealth at the decedent's death the seventy-nine portraits in question, and denying taxable situs or taxability of the property in Pennsylvania; a hearing by the appraiser, who referred the question of taxability to the Department of Justice, of which the appellee Schnader is the head, and pending a decision by him postponed the appraisement indefinitely; and re-

[1] Act of June 20, 1919, P.L. 521; 72 Purdon's Penna. Stats. § 2301, as amended by Act of June 22, 1931, P.L. 690.

peated requests for an immediate determination of tax liability, in response to which the appellee Schnader orally advised the appellant its claim of nontaxability in Pennsylvania would be denied. The bill charges that if the statute be construed to impose an inheritance tax upon the paintings merely because they were temporarily within the Commonwealth at the time of the decedent's death, it is unconstitutional as depriving the appellant of property without due process and denying equal protection of the laws, in contravention of the Fourteenth Amendment; and if the statute be construed as not applying to the property, the threatened appraisal, assessment and collection by the defendants will unconstitutionally deprive the appellant of property without due process and deny it equal protection. It further charges that the threat of appraisement, assessment and collection, and the unlawful failure and refusal of the appellee Metzger to issue a waiver of taxes on behalf of the Commonwealth, have caused and are causing irreparable injury by interfering with the administration of the estate in the Surrogate's Court of New York, preventing distribution, compelling the executor to maintain large cash reserves at a low rate of interest to cover a possible Pennsylvania tax and costs of litigation; and also that the threatened tax constitutes a possible lien and a cloud upon the title of the plaintiff, interfering with the sale of the paintings as directed by the will. The bill avers the absence of any adequate remedy at law.

A temporary injunction was issued, an answer was filed admitting the facts stated, and a statutory court of three judges was convened and heard the case on the pleadings and an agreed statement which is immaterial to the questions presented.

The answer asserted, and the court found, that the appellant had an adequate remedy at law, as it could appeal from the appraisement, when made, to the Dauphin

County court, which has jurisdiction to pass on both the amount of the tax and the legality of its imposition. The bill was therefore dismissed for want of equity.

1. It is conceded that neither the statutes of Pennsylvania nor the decisions of its courts permit an action at law for the recovery of a tax paid under protest. If that procedure were permissible in the state courts, the appellant could pursue the same remedy in a federal court, there being the requisite diversity of citizenship and amount in controversy. *Matthews* v. *Rodgers*, 284 U.S. 521. Under the state law the only remedy afforded one who has paid a tax is an application for refund to the Board of Finance and Revenue, an administrative body; but the action upon the claim is final and no court may review or set aside the Board's decision.[2] The District Court, however, was of opinion that the taxpayer's right of appeal from the appraisal to the Court of Common Pleas of Dauphin County, constituted such a remedy at law as ousted the jurisdiction of a federal court of equity. The Act of Assembly[3] requires the appointment of an appraiser whose duty is to report his appraisement in writing to the Department of Revenue, which must then give immediate notice to all parties interested, and continues: "Any person not satisfied with the appraisement . . . may appeal within thirty days to the court of common pleas of Dauphin County, on paying or giving security to pay all costs together with whatever tax shall be fixed by the court. Upon such appeal, the court may determine all questions of valuation, and the liability of the appraised estate for such tax, subject to the right of appeal to the Supreme or Superior Court."

[2] Act of April 9, 1929, P.L. 343, Art. V, § 503; 72 Purdon's Penna. Stats. § 503.

[3] Act of April 9, 1929, P.L. 343, § 1202; 72 Purdon's Penna. Stats. § 1202.

The appeal must be entered in a state court specifically designated by the statute, and is thus not an ordinary action at law, but a statutory proceeding. The Commonwealth has conditioned the right to implead it, upon resort-to a forum of its choice. The taxpayer cannot, therefore, though a non-resident, appeal from the appraisement to a federal court. Moreover, in such cases, upon the perfecting of an appeal, the Commonwealth becomes the adverse party to the litigation in the common pleas court (*Commonwealth* v. *Taylor*, 29A Dauph. Co. Rep'r (Pa.) 102; *Commonwealth* v. *Taylor*, 32 Dauph. Co. Rep'r (Pa.) 207); and this fact would prevent removal of the case from the Dauphin County court to a federal court; Judicial Code, § 24, as amended; 28 U.S.C. § 41 (1); Judicial Code, § 28, as amended; 28 U.S.C. § 71; for the State is not a citizen within the purview of these statutes which define the jurisdiction of the federal courts and permit a removal to them (*Stone* v. *South Carolina*, 117 U.S. 430; *Postal Telegraph Co.* v. *Alabama*, 155 U.S. 482; *Arkansas* v. *Kansas & Texas Coal Co.*, 183 U.S. 185), nor is the controversy one arising under the laws of the United States. *Tennessee* v. *Union & Planters' Bank*, 152 U.S. 454; *Chicago, R. I. & P. Ry. Co.* v. *Nebraska*, 251 Fed. 279. As the statutory remedy, if it be treated as an action at law, would lie only in the state court and is not cognizable by the federal courts, either as an original action or by removal, its existence cannot oust federal equity jurisdiction. *Smyth* v. *Ames*, 169 U.S. 466, 516; *Chicago, B. & Q. R. Co.* v. *Osborne*, 265 U.S. 14, 16; *Risty* v. *Chicago, R. I. & P. Ry. Co.*, 270 U.S. 378, 388; *Matthews* v. *Rodgers, supra,* p. 526.

2. Since the Dauphin County court is empowered, upon appeal from the action of the appraiser, to determine all questions, including both valuation and liability for the tax, the contention is made that its function is at

least in part administrative, and a suit for injunction may not be entertained by a federal court prior to the decision of the state court. *Prentis* v. *Atlantic Coast Line,* 211 U.S. 210; *Porter* v. *Investors Syndicate,* 286 U.S. 461. The statutes under consideration in those cases delegated legislative power of regulation to an administrative body and vested a revisory power in a court. As has repeatedly been held, the action of the court in such a matter is legislative rather than judicial, so that one who has not pursued the legislative process to a conclusion cannot turn to a court of equity for relief from a regulatory order which is not the final word of the constituted state authority. But other decisions make it clear that, while the action of the appraiser in a case like the present is purely administrative, the function of the court upon appeal is judicial in character, if, when the case is brought into the court, the Commonwealth becomes plaintiff and the taxpayer defendant, and the action is tried as an ordinary action, resulting in a judgment, which is final and binding on the parties, subject only to appeal to a higher state court, as permitted by the Act. This renders the proceeding judicial, and gives it the character of a suit or action at law.

In *Boom Co.* v. *Patterson,* 98 U.S. 403, it appeared that the state law authorized the Boom Company to exercise the right of eminent domain. The statutes required an application to a court for the appointment of commissioners to appraise the value of the land to be taken. Should the award of the commissioners prove unsatisfactory to the company or to the land owner, an appeal lay to the district court, where the cause was to be entered by the clerk as a case upon the docket, the owner of the land being designated plaintiff and the corporation seeking condemnation defendant. The act required the court to proceed to " hear and determine said case in the same

manner as other cases are heard and determined in said court." Of this procedure it was said, p. 406:

" The proceeding in the present case before the commissioners appointed to appraise the land was in the nature of an inquest to ascertain its value, and not a suit at law in the ordinary sense of those terms. But when it was transferred to the District Court by appeal from the award of the commissioners, it took, under the statute of the State, the form of a suit at law, and was thenceforth subject to its ordinary rules and incidents. The point in issue was the compensation to be made to the owner of the land; in other words, the value of the property taken. No other question was open to contestation in the District Court."

To the same effect see *Searl* v. *School District No. 2,* 124 U.S. 197; *Mason City & Ft. Dodge R. Co.* v. *Boynton,* 204 U.S. 570.

In *Delaware County* v. *Diebold Safe Co.,* 133 U.S. 473, the question was as to a proceeding for the collection of a claim against the county. The statute directed that any person having a claim against a county should file it with the county auditor, who should present it to the board of commissioners, and they were required to examine the claim and allow it in whole or in part. No court was to have original jurisdiction of any claim against a county, but if the claimant felt aggrieved by the decision of the commissioners he might appeal to the circuit court of the county. Thereupon the auditor was to make a transcript of the proceedings before the board and deliver it to the clerk of the court. The appeal was to be docketed like other cases pending in the court, heard, and tried as an original cause. This court said, p. 486, that although the proceedings of the county commissioners are in some respects assimilated to proceedings before a court, and the commissioners' decision, if not appealed from, is not

subject to collateral attack, yet the proceedings are in the nature not of a trial *inter partes,* but of an allowance or disallowance, by officers of the county, of a claim against it. The court added that " the trial in the Circuit Court of the county was ' the trial ' of the case, at any time before which it might be removed into the Circuit Court of the United States, . . ."

*Chicot County* v. *Sherwood,* 148 U.S. 529, involved procedure for the collection of county bonds. State legislation declared that a county could not be sued or proceeded against in any court except as in the act provided. Demands against the county were to be presented to the county court for allowance or rejection. From the order of that court appeals were allowed as provided by law. If in any such appeal the judgment of the county court was reversed, the reversal was to be certified by the superior court to the county court, which was required to enter it as its own judgment. This court said, p. 532:

" If, however, the presentation of a demand against the county, duly verified, according to law, to the county court thereof, ' *for allowance* or *rejection* ' is not the beginning of a suit or does not involve a trial *inter partes,* it is *then* only a preliminary proceeding to a suit or controversy which, by the appeal of either side, is or may be carried to an appellate court, before which there is an actual trial between the parties interested. The right to maintain this revisory trial in the state court . . . will be sufficient to maintain a like suit by original process in a federal court where the requisite diverse citizenship exists."

In *Smith* v. *Douglas County,* 254 Fed. 244, it appeared that a Nebraska statute imposed a tax on inheritances, for the benefit of the county of the decedent's residence, at a stipulated rate upon the appraised value of the property. The method of levying the tax was, that the county judge appointed an appraiser to report the valuation to the

judge, who then fixed the value and the amount of tax and gave notice to all interested parties. Anyone dissatisfied with the judge's finding might appeal within sixty days to the county court upon filing bond to cover costs and the tax which might be fixed by the court. The statute provided that county courts should have jurisdiction " to hear and determine all questions in relation to all taxes arising under this article." It will be noted how closely the procedure resembles that prescribed with respect to the tax in controversy. It was held that the proceeding was *ex parte* until it reached the county court; but thereafter became a controversy *inter partes,* and the court's action in determining all questions in relation to the tax was not merely administrative, but judicial.

If the Dauphin County court were by the act of Assembly granted only the right to revise the valuation of the appraiser, and precluded from considering any other question, its proceedings would be purely administrative, and the contention that the appellant had failed to pursue to the end its administrative remedy would be sound (*Upshur County* v. *Rich,* 135 U.S. 467), at all events where the valuation is a subject of controversy.

The court below relied upon *Keokuk & Hamilton Bridge Co.* v. *Salm,* 258 U.S. 122, where a bill to enjoin collection of a state tax was held to lack equity. That case is, however, distinguished by the fact that before resorting to any court the taxpayer could have appealed to the board of review to correct the assessment of which he complained, and the record failed to show that he had pursued the administrative remedy so afforded him (p. 125).

The Acts of Assembly of Pennsylvania direct the Department of Revenue to collect, and the Attorney General to bring suit for, the amount of the tax, if it is not paid within one year of assessment. If, therefore, the appel-

34

lant should omit to take an appeal to the Dauphin County common pleas court, the assessment would become final and the appellant liable to suit for the amount of the tax.[4] As the Commonwealth is the plaintiff in the action, the cause could not be removed, for reasons already stated.

We are of opinion that upon the making of the appraisement the administrative procedure is at an end, and the appellant can thereafter resort to a federal court of equity to restrain further action by the state officers if in violation of constitutional rights.

3. The question, then, is whether the bill was prematurely filed. In view of what has been said, the appellant's cause of action in equity will not, strictly speaking, arise until an appraisement is made and certified to the Department of Revenue and notice of the fact is given appellant. However, in view of the allegations of the bill, we are not inclined to hold the suit premature. The bill charges that the Secretary of Revenue has refused to issue a waiver of tax, and that the Attorney General has notified the appellant and the State's appraiser the property is subject to the tax, and the appellant's claim for exemption will be denied. The Commonwealth's law officers plainly intend to perform what they consider their duty, and will, unless restrained, cause the assessment and imposition of the tax. The action the legality of which is challenged thus appears sufficiently imminent and certain to justify the intervention of a court of equity. Compare *Pennsylvania* v. *West Virginia*, 262 U.S. 553, 592. Moreover, no purpose would be served by dismissing the bill, if, as we hold, the moment the proposed assessment is made another suit may be instituted in the federal court.

[4]Act of April 9, 1929, P.L. 343, § 203 (h), § 1406; 72 Purdon's Pa. Stats. § 203 (h), § 1406.

The decree of the District Court is reversed and the cause remanded with instructions to reinstate the bill and proceed to a hearing upon the merits.

*Reversed.*