**MITCHELL v. WRIGHT et al.**

No. 11538.

Crcuit Court of Appeals, Fifth Circuit.

April 24, 1946.

Rehearing Denied May 20, 1946.

Arthur D. Shores, of Birmingham, Ala., and Thurgood Marshall, of New York City, for appellant.

Richard T. Rives, W. W. Callahan, and William N. McQueen, all of Montgomery, Ala., for appellees.

Before HOLMES, McCORD and LEE, Circuit Judges.

HOLMES, Circuit Judge.

This is an action by appellant, suing in behalf of himself and all others similarly situated. It was brought against appellees for their refusal, solely on the ground of his race or color, to register him. He prayed for a declaratory judgment, a permanent injunction, and damages in the sum of five thousand dollars. On motion of the defendants, the court below dismissed the complaint in its entirety on the ground that the plaintiff had failed to exhaust his administrative remedy in the state courts of Alabama.

The motion to dismiss, as a matter of law, admitted all of the well-pleaded facts alleged in the complaint. From these facts it appears in substance as follows: The plaintiff is a Negro over the age of twenty-one years; he resides in Macon County, Alabama; he is a citizen of that state and of the United States; he pays taxes on real property with an assessed valuation of over three hundred dollars; is able to read and write any provision in the federal Constitution; is not an idiot or an insane person; has never been convicted of a felony or other crime, and was on July 5, 1945, possessed of all of the qualifications and none of the disqualifications of registered voters in Alabama.

He executed and filed the written form furnished by the registrars to applicants for registration; as filled out by him, his application showed that he was qualified to register and vote, but the defendants refused to register him and others, when they applied for registration on the date aforesaid, solely on the ground of their race or color. This refusal was pursuant to the policy, custom, and usage of the defendants, acting under color of state authority, to deprive Negroes of the right to vote in Alabama. Since registration is a prerequisite to the right to vote in any election in Alabama, including the election of federal officers, the action of the registrars did effectively deprive appellant of the right to vote.

The jurisdiction of the court below was invoked pursuant to several applicable statutes [1] and constitutional provisions.[2] Pertinent authorities uphold appellant's contention that the court below had jurisdic-

---

[1] 8 U.S.C.A. §§ 31 and 43; 28 U.S.C.A. § 41 (11) and (14).

[2] Sections 2 and 4 of Article 1 and the 14th, 15th, and 17th Amendments to the Constitution of the United States.

tion to grant relief in this case,[3] but we are urged to affirm the judgment under review on the ground that appellant's failure to exhaust his administrative remedy in the state courts of Alabama ousted the jurisdiction of the federal court.

It is true that, under the laws of Alabama, any person denied registration has the right to appeal to the proper circuit court of the state, thence to the Supreme Court;[4] but the remedy so provided is not deemed by us to be purely of an administrative nature; it is of the type of proceeding traditionally considered judicial. The aggrieved party may go into the state circuit court, which is a judicial court of general jurisdiction of law and equity, or into a court of like jurisdiction. A trial by jury is provided, and the court is required to charge the jury as to the qualifications of voters. The weight and effect of the evidence are for the determination of the jury. The reviewing court may enter final judgment, which shall entitle the petitioner to register as of the date of his application, but neither the circuit court nor the Supreme Court possesses the power to substitute its order for that of the registrars.[5]

■ The Alabama circuit court has no power to register the applicant, though when its jurisdiction is invoked it may find as a fact, and adjudicate as the law, that he is entitled to registration, and though it may issue an extraordinary writ commanding the registrar particularly to obey the law and to perform the specific ministerial act of registration. These things,

and the use of juries, are quintessentially judicial; they are the indicia of a judicial court, not of an administrative board or office; the final judgment of such a court is res judicata. What was said in Lane v. Wilson, 307 U.S. 268, 59 S.Ct. 872, 83 L.Ed. 1281, with reference to the Oklahoma state procedure having all the indicia of a conventional judicial proceeding, applies to the Alabama remedy that is afforded to aggrieved applicants for registration; and we hold that appellant was authorized to institute this action without appealing to the state circuit court or any court of like jurisdiction.

■ We are also urged to affirm this judgment because the complaint averred only inferentially that the plaintiff was qualified to register, and did not allege that he had resided in the state at least two years, in the county one year, and in the precinct or ward three months immediately preceding the election at which he offered to vote. This would dispose of the case on a technicality of pleading, though the new rules provide that all pleadings shall be so construed as to do substantial justice.[6] The court below did not put its decision on this ground.[7] If it had, the plaintiff might have amended his complaint so as to obviate the point; and his attorneys now ask leave to amend if this cause is remanded for trial, which leave is required to be freely given when justice so requires.[8]

■ If the office of pleading is to inform the court and the parties of the facts in issue; the court, that it may declare the law; and the parties, that they may know

---

[3] Guinn v. United States, 238 U.S. 347, 35 S.Ct. 926, 59 L.Ed. 1340, L.R.A.1916A, 1124; Nixon v. Herndon, 273 U.S. 536, 47 S.Ct. 446, 71 L.Ed. 759; Nixon v. Condon, 286 U.S. 73, 52 S.Ct. 484, 76 L.Ed. 984, 88 A.L.R. 458; Lane v. Wilson, 307 U.S. 268, 59 S.Ct. 872, 83 L. Ed. 1281; Smith v. Allwright, 321 U.S. 649, 64 S.Ct. 757, 88 L.Ed. 987, 151 A. L.R. 1110; Berry v. Davis, 8 Cir., 15 F. 2d 488.

[4] Section 35, Title 17, of the Alabama Code of 1940.

[5] Cf. Bacon v. Rutland R. Co., 232 U. S. 134, 34 S.Ct. 283, 58 L.Ed. 538, where the court could affirm or reverse and remand, and the review was held judicial. Also compare Prentis v. Atlantic

Coast Line, 211 U.S. 210, 29 S.Ct. 67, 53 L.Ed. 150, where the court, if it reversed, was to substitute such order as in its opinion the commission should have made, and the review was held legislative. See also City Bank Farmers Trust Co. v. Schnader, 291 U.S. 24, 54 S.Ct. 259, 78 L.Ed. 628, where the review was held to be judicial because the court could determine liability for the tax as well as all questions of valuation.

[6] Rule 8(f) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

[7] Mitchell v. Wright, D.C., 62 F.Supp. 580.

[8] Rule 15(a) of Federal Rules of Civil Procedure.

what to meet by their proof:[9] we think the wrong and injury for which redress is here sought sufficiently appear from the pleading.[10] As in Lane v. Wilson, supra, the basis of this action is inequality of treatment under color of law. The fact that the law is fair upon its face is not a defense if it is administered in a discriminatory manner.[11]

The judgment appealed from is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

LEE, Circuit Judge (specially concurring).

While I am in accord generally with the reasons assigned by my associates in Mitchell v. Wright, and Hall v. Nagel, 5 Cir., 154 F.2d 931, involving the denial of registration to Negro applicants, I prefer to predicate my concurrence in the reversal of the lower courts on the doctrine of the exhaustion of legal remedies. Well-pleaded facts pointed out in the majority opinions, admitted by and for the purpose of the motions to dismiss, render futile, as respects said motions, the other defenses urged.

Where a statute provides corrective relief from a legislative determination by an administrative agency, the doctrine of the exhaustion of administrative remedies requires that an aggrieved person, before resorting to the judiciary, must first exhaust his statutory administrative remedy.[1] Federal courts apply the doctrine in actions to enjoin state officials.[2] While the rationale given for the doctrine varies,[3] self-re-

---

[9] Hill v. Mendenhall, 21 Wall. 453, 88 U.S. 453, 22 L.Ed. 616.

[10] Paragraphs 3, 6, 10, and 11 of the complaint are as follows:

"3. All parties to this action, both plaintiff and defendants are citizens of the United States and of the State of Alabama, and are residents and domiciled in said State.

"6. Plaintiff, William P. Mitchell, is colored, a person of African descent and Negro blood, is over the age of twenty-one years. He is a taxpayer of the State of Alabama, and pays tax on real property with an assessed valuation in excess of Three Hundred Dollars. Plaintiff alleges that he is able to read and write any passage of the United States Constitution, that he has never been adjudged guilty of felony or any crime and that he is not an idiot or insane. Plaintiff further alleges that by reason of the allegation herein above made, he was in all particulars on the 5th day of July, 1945, and still is possessed of the qualifications of an elector and as such was and is entitled to be registered as such elector.

"10. That on or about the 5th day of July, 1945, during the regular registration period while defendants, Mrs. George C. Wright and Virgil M. Guthrie, were acting as registrars of voters under the laws of Alabama in conducting the registration of persons qualified to register, plaintiff made application at the Macon County Court House, the place for registration of persons qualified to register, he filled out the regular form for registration, he produced two persons to vouch for him, as required by the board, he correctly answered such questions as were asked in proof of his qualifications, and was ready, willing and able to give any further information and evidence necessary to entitle him to be registered; that by reason of the said fact hereinbefore made, plaintiff was entitled to be registered as a voter. Plaintiff applied for registration in order to be eligible to vote in future federal as well as state elections.

"11. Plaintiff further shows that during such registration period and on or about the 5th day of July, 1945, white persons presenting themselves for registration were not required to present persons to vouch for them, but were registered forthwith, whereas your petitioner solely because of his race and color was required to wait long hours before being permitted to file his application, was required to present persons to vouch for him, after which the said defendants denied plaintiff application and wrongfully refused and illegally failed to register plaintiff on said July 5, 1945, solely on account of his race, color and previous condition of servitude. Plaintiff further states that it has become the general habitual and systematic practice of said Board of Registrars, including these defendants, Mrs. George C. Wright and Virgil M. Guthrie, and their predecessors in office to refuse to register Negro residents of Macon County, including the plaintiff, William P. Mitchell."

[11] Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220.

[1] See 42 Am.Jur. 580, 581.

[2] Natural Gas Pipeline Co. of America v. Slattery, 302 U.S. 300, 58 S.Ct. 199, 82 L.Ed. 276.

[3] 42 Am.Jur. 580, 581, § 197.

928

straint on the part of the judiciary from interference in legislative functions [4] is the underlying basis. The doctrine has no application to a statutory review of a determination devoid of any legislative function.[5]

In the case of Lane v. Wilson, 1938, 307 U.S. 268, 59 S.Ct. 872, 83 L.Ed. 1281, the Supreme Court has already considered the application of the doctrine of the exhaustion of administrative remedies to a situation where election officials in Oklahoma refused to register a Negro citizen and the Negro brought suit under the Civil Rights Law for resulting damages. Justice Frankfurter discusses the doctrine at page 274 of 307 U.S., at page 875 of 59 S.Ct., 83 L.Ed. 1281: "The other preliminary objection to the maintenance of this action is likewise untenable. To vindicate his present grievance the plaintiff did not have to pursue whatever remedy may have been open to him in the state courts. Normally, the state legislative process, sometimes exercised through administrative powers conferred on the state courts, must be completed before resort to the federal courts can be had. Prentis v. Atlantic Coast Line Co., 211 U.S. 210, 29 S.Ct. 67, 53 L.Ed. 150. But the state procedure open for one in the plaintiff's situation (Section 5654 [26 Okl.St.Ann. § 74]) has all the indicia of a conventional judicial proceeding and does not confer upon the Oklahoma courts any of the discretionary or initiatory functions that are characteristic of administrative agencies. * * * Barring only exceptional circumstances, * * * or explicit statutory requirements, * * * resort to a federal court may be had without first exhausting the judicial remedies of state courts. * * *"

To better understand what Justice Frankfurter had in his mind, quotation from Prentis v. Atlantic Coast Line Co., supra, cited by him is in point [211 U.S. 210, 29 S.Ct. 69]:

"A judicial inquiry investigates, declares, and enforces liabilities as they stand on present or past facts and under laws supposed already to exist. That is its purpose and end. Legislation, on the other hand, looks to the future and changes existing conditions by making a new rule, to be applied thereafter to all or some part of those subject to its power. The establishment of a rate is the making of a rule for the future, and therefore is an act legislative, not judicial, in kind, as seems to be fully recognized by the supreme court of appeals. * * *

"Proceedings legislative in nature are not proceedings in a court, * * * no matter what may be the general or dominant character of the body in which they may take place. * * * That question depends not upon the character of the body, but upon the character of the proceedings. * * *"

Another element of distinction between legislative and judicial functions, not mentioned in the Lane v. Wilson case, is the element of generality or particularity. 42 American Jurisprudence, § 40, pages 332, 333, says: "Legislative and judicial functions have been distinguished by the element of generality in the former and particularity in the latter, that is, legislation operates against a class and judgments against individuals."

Thus, we have several elements with which we may distinguish legislative and judicial functions, to-wit: the element of futurity or retrospect, that of generality or particularity, that of discretion, and that of initiation. A good example of the element of discretion is the determination of a legislative body on the basis of public interest. The judiciary will not interfere with this type of discretion.[6] One must be careful, however, not to confuse this legislative discretion with judicial discretion. Justice Frankfurter in Lane v. Wilson, as quoted above, refers to the element of

[4] See Prentis v. Atlantic Coast Line Co., 211 U.S. 210, 29 S.Ct. 67, 53 L.Ed. 150; Porter v. Investors Syndicate, 286 U.S. 461, 52 S.Ct. 617, 76 L.Ed. 1226, affirmed on rehearing, 287 U.S. 346, 53 S.Ct. 132, 77 L.Ed. 354; Natural Gas Pipeline Co. of America v. Slattery, 302 U.S. 300, 58 S.Ct. 199, 82 L.Ed. 276.

[5] Lane v. Wilson, 307 U.S. 268, 59 S.Ct. 872, 83 L.Ed. 1281.

[6] Federal Communications Commission v. Pottsville Broadcasting Co., 309 U.S. 134, 138, 60 S.Ct. 437, 84 L.Ed. 656.

initiation in his distinction between legislative and administrative functions. He quite likely meant by the term "initiatory functions" the power or ability to begin a proceeding in a tribunal.[7]

42 American Jurisprudence, at pages 328 and 329, § 35 says: "The principal reason which has given rise to the necessity for 'Administrative Law' as a new classification of the law is the fact of the endowment of administrative authorities with 'legislative' and 'judicial' powers. The distinguishing factors of the powers here considered are that the result of their exercise operates in the future, rather than on past transactions and circumstances, and generally, rather than particularly. Such powers are of three types: (1) rule making by reason of particular delegation of authority; (2) rule making by the construction and interpretation of a statute being administered; (3) determination under a delegated power whether a statute shall go into effect."

The Oklahoma statute under consideration in Lane v. Wilson provides: "It shall be the duty of the precinct registrar to register each qualified elector of his election precinct who makes application * * * and such person applying shall at the time he applies to register be a qualified elector in such precinct and he shall comply with the provisions of this act * * *; and provided further, that wherever any elector is refused registration by any registration officer such action may be reviewed by the district court of the county by the aggrieved elector by his filing within ten days a petition with the Clerk of said court, whereupon summons shall be issued to said registrar requiring him to answer within ten days, and the district court shall be [sic] an expeditious hearing and from his judgment an appeal will lie at the instance of either party to the Supreme Court of the State as in civil cases; * * *."

Section 35, Title 17, of the Alabama Code 1940, provides that: "Any person to whom registration is denied shall have the right of appeal * * * by filing a petition in the circuit court or court of like jurisdiction held for the county in which he or she seeks to register, to have his or her qualifications as an elector determined. * * * Upon such trial the court shall charge the jury only as to what constitutes the qualifications that entitle the applicant to become an elector at the time he or she applied for registration, and the jury shall determine the weight and effect of the evidence, and return a verdict. From the judgment rendered an appeal will lie to the supreme court in favor of the petitioner to be taken within thirty days. Final judgment in favor of the petitioner shall entitle him or her to registration as of the date of his or her application to the registrars."

Section 5, Article 8, of the Constitution of Louisiana provides: "Any person possessing the qualifications for voting prescribed by this Constitution, who may be denied registration, shall have the right to apply for relief to the district court having jurisdiction of civil causes for the parish in which he offers to register. Said court shall then try the cause * * * before a jury of twelve, nine of whom must concur to render a verdict. This verdict shall be a final determination of the cause. The trial court may, however, grant one new trial by jury. In no cases shall any appeal lie or any other court exercise the right of review."

Do the Alabama and Louisiana courts have any legislative functions that would distinguish these cases from Lane v. Wilson? In the first place, neither the Alabama nor the Louisiana statutory and constitutional provisions provide the court with any initiatory function. The applicant for registration must start proceedings before the court.

Secondly, the Statutes and Constitutions of Alabama and Louisiana require the juries to determine the qualifications or disqualifications of the applicant by determining the facts and applying them to the law as charged by the court. No legislative function is delegated. A jury's function is the finding of facts. The legislative function presupposes the delegatee possesses qualifications of expertness.[8] A jury

---

[7] See 42 Am.Jur. 323, 324.

[8] Natural Gas Pipeline Co. of America v. Slattery, 302 U.S. 300, 58 S.Ct. 199, 82 L.Ed. 276.

possesses no such qualifications. Moreover, the Alabama statute provides that "the jury shall determine the weight and effect of the evidence, and return a verdict." The terms "weight" and "evidence" clearly denote a finding of fact, and "verdict," the application of the fact to the law as charged by the court. The Louisiana Constitution provides: "Said court shall then try the cause, giving it preference over all other cases, before a jury of twelve, nine of whom must concur to render a verdict." The terms "cases" and "verdict," likewise, denote mere questions of fact and the application of the fact to the law as charged by the court.

In the third place the determinations of the Alabama courts and the Louisiana courts have neither an element of futurity, illustrated by rule-making powers, nor an element of generality, illustrated by a dispensary power.

My brethren place great reliance in the Alabama case and, by inference, in the Louisiana case, on the reviewing courts' lack of power "to substitute its order for that of the registrars" and their lack of power to register the applicant. I do not think that the lack of these powers determine the legislative or judicial quality of the reviewing courts' determination.

Under both the Alabama Code and the Louisiana Constitution and Statutes the juries decide the same questions of qualifications determined by the registrars, and the juries give no weight to the previous determinations of the registrars. For these reasons, any element of legislative function exercised by the registrars would never influence the final determination of the applicant's right to registration. Therefore, the reviewing courts' lack of power "to substitute its order for that of the registrars" is irrelevant in deciding the legislative or judicial quality of the reviewing courts' functions.

After a court in the light of a jury verdict has determined the right of an applicant to register, the presence or absence of power in the court manually to register the applicant does not determine the legislative or judicial quality of its functions. Where a statute provides an officer with a duty purely ministerial in character, a court may compel the officer to act without any regard to the exhaustion of administrative remedies.[9] A court of equity in some states may direct an officer to execute a deed,[10] but the court of equity would not thereby be exercising a legislative function.

Neither Federal Radio Commission v. General Electric Co., 281 U.S. 464, 50 S.Ct. 389, 390, 74 L.Ed. 969, nor Federal Radio Commission v. Nelson Bros. B. & M. Co., 289 U.S. 266, 53 S.Ct. 627, 77 L.Ed. 1166, 89 A.L.R. 406, cited by appellees, is apposite to the problem before this court. In those cases the statute predicated the grant of radio licenses on a determination by the Commission of the "public convenience, interest or necessity." In the earlier case the Supreme Court held that the statutory appeal to the Court of Appeals of the District of Columbia made the functions of that court essentially legislative or administrative because " * * * the powers confided to the commission respecting the granting and renewal of station licenses are purely administrative, and that the provision for appeals to the Court of Appeals does no more than make that court a superior and revising agency in the same field."

In the later case, after the provisions for a statutory review of the Commission's determination had been altered so as to take from the Court of Appeals the right as revising agent to determine the "public convenience, interest or necessity" and to permit a review only of questions of law, the Supreme Court held that the functions of the Court of Appeals of the District of Columbia then had become purely judicial. The determination of the "public convenience, interest or necessity" in the Federal Radio Commission cases involved the exercise of discretionary powers, hence, was essentially legislative in character. The determination of the qualifications of an applicant for registration involves no discretionary powers.

On the basis of the foregoing authorities and reasons, I believe that in both the Ala-

---

9 See 42 Am.Jur. 575, § 195.

10 30 C.J.S., Equity, §§ 613, 1011, 1012.

bama and Louisiana cases legislative functions, prerequisite to an application of the doctrine of the exhaustion of administrative remedies, were non-existent in the reviewing courts under the state laws.

