**William B. HATCHER,**
**Petitioner-Appellant,**

v.

**DEPARTMENT OF THE AIR FORCE,**
**Respondent-Appellee.**

No. 82–5624.

United States Court of Appeals,
Eleventh Circuit.

May 26, 1983.

Rehearing and Rehearing En Banc
Denied Aug. 1, 1983.

---

Mallard, McDonald & Horder, Dana E. McDonald, Atlanta, Ga., for petitioner-appellant.

Curtis L. Bentz, USAF/JACL, Washington, D.C., for respondent-appellee.

Before RONEY and KRAVITCH, Circuit Judges, and SIMPSON, Senior Circuit Judge.

KRAVITCH, Circuit Judge:

We are called upon to review a decision of the Merit Systems Protection Board ("MSPB" or "the Board"), affirming the decision of the Department of the Air Force ("the Agency") to remove petitioner, William B. Hatcher, from his position as Manager of the Officer's Club at Tyndall Air Force Base.

*Background*

Petitioner became manager of the Tyndall Air Force Base Officer's Club on July 23, 1978. The Tyndall club had a history of financial problems and there had been a frequent change of managers prior to petitioner's promotion to that position from his previous position as manager of the Officer's Club at Maxwell Air Force Base.

On December 28, 1979, the agency issued to petitioner a document entitled "Critical Elements of the Officers' Open Mess Manager's Position Description." On March 19,

1980, another memorandum was issued to petitioner identifying 38 tasks to be completed between March 19 and June 12, 1980, and indicating that the petitioner's club had received negative ratings based on inadequate management. During this period several agency personnel were sent to observe, review or report on the operation of the club and petitioner's management thereof. On July 7, 1980, a Proposal to Remove petitioner as manager of the club was issued. Petitioner was given an opportunity to and did submit a reply to the allegation that he had failed properly to manage the club and the four specific examples of inadequacy cited as a basis for the proposed removal.

On August 8, 1980, the agency issued its Decision to Remove petitioner pursuant to subchapter II of Chapter 75 of 5 U.S.C., continuing to rely on the four originally cited deficiencies and ruling that the removal would promote the efficiency of the service. On September 2, 1980, petitioner appealed the removal to the MSPB Atlanta Regional Office. A hearing was conducted on November 17–19, 1980. An initial decision was issued by the MSPB presiding official on February 24, 1981. In that decision the presiding official concluded that the preponderance of the evidence supported three of the agency's four examples of inadequacy and that a preponderance of the evidence supported the removal decision. Petitioner then petitioned the MSPB in Washington, D.C. for review. The MSPB's final decision affirming the decision of the presiding official was issued on April 21, 1981.

This appeal pursuant to 5 U.S.C. § 7703(b)(1) then ensued.

*Issues and Law*

As an employee of the Federal Civil Service, Hatcher could be removed from service only pursuant to certain prescribed statutory procedures. The statute by which petitioner was removed, Title 5, Chapter 75,

Subchapter II of the U.S.Code, provides for removals "for such cause as will promote the efficiency of the service." 5 U.S.C. § 7513(a). However, that particular subchapter and the procedures provided therein, are inapplicable to "a reduction in grade or removal under section 4304 of this title ...." 5 U.S.C. § 7512(D). In 1978, as part of a comprehensive reform of the civil service, 5 U.S.C. § 4304 was amended to provide for removals for "unacceptable performance" and to establish specific procedures to be followed in such removal actions.

Petitioner's removal was undertaken due to alleged performance deficiencies. He contends that since the 1978 amendments to Chapter 43, that chapter provides the exclusive vehicle for removals for substandard performance and that all performance induced removals must be undertaken pursuant thereto. He argues that no longer can any substandard performance qualify as "such cause as will promote the efficiency of the service," 5 U.S.C. § 7513(a); to justify removal, inadequate performance must qualify as "unacceptable performance," 5 U.S.C. § 4303(a); and, because the evidence in his case was not directed at proving "unacceptable performance" but promotion of the efficiency of the service, the removal must be set aside and he must be reinstated pending removal proceedings pursuant to Chapter 43.

Petitioner acknowledges that the MSPB, the District of Columbia Circuit, and the Federal Circuit all have concluded that performance based removals still may be had under Chapter 75. *See Kochanny v. Bureau of Alcohol, Tobacco and Firearms,* 694 F.2d 698, 701 (Fed.Cir.1982); *Darby v. Internal Revenue Service,* 672 F.2d 192, 195 (D.C.Cir. 1982); *Drew v. United States Department of Navy,* 672 F.2d 197, 201 (D.C.Cir.1982); *Wells v. Harris,* 1 MSPB 199, 202 (1979) (dicta). He argues, however, that the decisions in these cases are erroneous.[1]

---

1. Petitioner argues alternatively that even if these decisions are not erroneous they are distinguishable in that in each a removal action originally was brought pursuant to Chapter 43 but reconsidered and affirmed under Chapter 75 after the *Wells* decision wherein the MSPB held that Chapter 43 removals could not be brought until performance appraisal regula-

Having reviewed the rationale of the decisions *supra,* the legislative history of the 1978 amendments to Chapter 43, and petitioner's arguments, we are in accord with the decisions of those who have ruled before us.

■ Congress' intent in adding to Chapter 43 the provisions for removals for "unacceptable performance" was to "simplify and expedite procedures for dismissals of Federal employees whose performance is below the acceptable level within a comprehensive framework for performance evaluation." S.Rep. No. 95–969, 95th Cong., 2d Sess. 1 (1978), *reprinted in* House Comm. on Post Office and Civil Service, 96th Cong., 1st Sess., Legislative History of the Civil Service Reform Act of 1978, at 1474 (Senate Report) U.S.Code Cong. & Admin.News 1978, p. 2723. While the dominant intent of Congress may have been to establish a single interrelated framework for utilizing this simplified and expedited procedure, *Wells v. Harris,* 1 MSPB at 201, there is nothing to indicate that Congress intended that an agency proceed against inadequate performance only pursuant to those simplified procedures. The agency's standard of proof in a removal action under Chapter 75 is a "preponderance of the evidence," 5 U.S.C. § 7701(c)(1)(B), significantly higher than the "substantial evidence" standard of Chapter 43 removals. 5 U.S.C. § 7701(c)(1)(A). In addition, under Chapter 75 the agency must prove that removal would "promote the efficiency of the service." If an agency chooses to proceed pursuant to Chapter 75 and can meet the higher burden imposed thereunder, "we have found nothing to indicate that Congress intended to prevent agencies from meeting those requirements where they are able to do so." *Wells v. Harris,* 1 MSPB at 202.[2]

■ In *Wells,* the MSPB construed "unacceptable performance" as a term of art defined in 5 U.S.C. § 4301(3). As such, it encompasses precise forms of substandard performance. This does not mean that inadequate performance that does not conform with that precise definition cannot be sufficiently substandard to justify removal. *Wells v. Harris,* 1 MSPB at 213. Certain forms of substandard performance may or may not qualify as "unacceptable performance" but still be of a type that justifies removal to "promote the efficiency of the service" under Chapter 75.[3] Therefore, we hold that Chapter 75 removals are available for substandard or inadequate performance.

Petitioner next argues that even if, as we hold today, removal pursuant to Chapter 75 for performance related deficiencies is allowed, his removal must be set aside because (1) the agency failed to establish the

---

tions were in place. To distinguish those cases in such a fashion only hurts petitioner's position. Given that here there is no problem arising from initially removing pursuant to one statute and affirming on the basis of another, the objection of the one dissenting judge in those cases is removed. *See Drew v. United States Dept. of Air Force,* 672 F.2d at 202–06 (Mikva, Jr., dissenting).

2. Respondent argues that this court should not reach the merits of petitioner's argument as he failed to raise this claim in any administrative proceedings prior to the final hearing by the MSPB in Washington, D.C. At that point the MSPB refused to consider fully petitioner's argument because he raised it there for the first time. Petitioner has failed to exhaust his administrative remedies. However we conclude that exhaustion would not have advanced the policies underlying the exhaustion of administrative remedies doctrine. *See Patsy v. Florida International University,* 634 F.2d 900, 903 (5th Cir.1981), *rev'd and remanded on other*

grounds, 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982). Raising this claim to the MSPB on the heels of the Board's decision in *Wells v. Harris,* 1 MSPB 199 (1979), wherein the Board made clear its interpretation that Chapter 75 was available for performance related removals, would have been an exercise in futility, and presents an exception to the exhaustion doctrine. *Patsy v. Florida International University,* 634 F.2d at 904. *See also City of Bank Farmers Trust Co. v. Schnader,* 291 U.S. 24, 54 S.Ct. 259, 78 L.Ed. 628 (1934); *Porter v. Schweiker,* 692 F.2d 740 (11th Cir. 1982).

3. There may be cases where certain substandard performance may fit the definition of "unacceptable performance" set forth in 5 U.S.C. § 4301(3) and also justify removal to promote the efficiency of the service under Chapter 75. Thus in some cases the agency may be able to exercise a choice between the two procedures.

nexus between the cause for his removal, and the promotion of the efficiency of the service, *see McClelland v. Andrus,* 606 F.2d 1278 (D.C.Cir.1979); *Doe v. Hampton,* 566 F.2d 265, 272 (D.C.Cir.1977), and (2) his removal was arbitrary and capricious.[4]

■ It is true that a removal pursuant to Chapter 75 is justified only if it will promote the efficiency of the service; hence the nexus between the cause for the removal and the promotion of the efficiency of the service must be established. The authority cited by petitioner speaks for itself in indicating that the "efficiency of the service" is promoted when the cause for the removal is a question of "the employee's ability to accomplish his or her duties satisfactorily," *Doe v. Hampton,* 566 F.2d 265, 272 (D.C.Cir.1977), or where work performance has been adversely affected, *McClelland v. Andrus,* 606 F.2d 1278, 1291 (D.C. Cir.1979). In such cases removal "would promote the efficiency of the service more than would [] retention . . . ." *Id.* See generally *Young v. Hampton,* 568 F.2d 1253 (7th Cir.1977).

Petitioner does not contest the sufficiency of the evidence supporting the Board's finding that his removal would promote the efficiency of the service; [5] rather he argues that the nexus between the cause and the promotion of efficiency can never be proved unless "the removal is for performance involving a critical job element for which performance standards had been properly established by the Agency." Petitioner's Brief at 17–18. This is a barely disguised attempt to read into Chapter 75 the specific requirements of Chapter 43 and to accomplish by indirection that on which petitioner

failed in the first issue. Long before the enactment of the 1978 reform legislation an employee's poor performance could be the basis for dismissal to promote the efficiency of the service under Chapter 75. *Thomas v. Ward,* 225 F.2d 953 (D.C.Cir.1955); *Armando Pimentel Y Cao v. Brownell,* 208 F.2d 47 (D.C.Cir.1953). Holding as we do that Chapter 43 does not provide the exclusive procedure for performance related removals, it would be incongruous to read into Chapter 75 procedure the distinguishing features of Chapter 43 "unacceptable performance" removal procedures.

As to the allegation that the removal decision was arbitrary and capricious:

> The court will normally defer to the administrative judgment on appropriate corrective action unless its severity appears totally unwarranted in light of such factors as the range of permissible punishment specified by statute or regulation, the disciplined party's job level and nature, his record of past performance, the connection between his job and the improper conduct charged, and the strength of proof that the conduct occurred.

*Giles v. United States,* 553 F.2d 647, 650–51 (Ct.Cl.1977). *Cf. Francisco v. Campbell,* 625 F.2d 266 (9th Cir.1980); *Albert v. Chafee,* 571 F.2d 1063 (9th Cir.1977).

■ Petitioner contends and the record reveals that a majority of the other club managers within the Tactical Air Command also failed to attain the goals he was removed for failing to achieve; none of those other managers were removed. The record is silent as to the circumstances surrounding the failure of those other managers to

---

**4.** 5 U.S.C. § 7703(c) sets forth the parameters of our review:

(c) In any case filed in the United States Court of Claims or a United States court of appeals, the court shall review the record and hold unlawful and set aside any agency action, findings, or conclusions found to be—

(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(2) obtained without procedures required by law, rule, or regulation having been followed; or

(3) unsupported by substantial evidence; except that in the case of discrimination brought under any section referred to in subsection (b)(2) of this section, the employee or applicant shall have the right to have the facts subject to trial de novo by the reviewing court.

**5.** Indeed any attack on the substantiality of the evidence necessarily would fail as there is an abundance of evidence in the record to support the removal decision.

achieve these goals. Meanwhile the record is replete with substantial evidence to support the agency's and the Board's decision that, by a preponderance of the evidence, petitioner's removal would promote the efficiency of the service. Having reviewed the entire record we find no evidence that the decision to remove petitioner was arbitrary, capricious or an abuse of discretion; rather substantial evidence supports the Board's conclusion that the preponderance of the evidence sustains the propriety of the removal. 5 U.S.C. § 7703(c)(3). *See Polcover v. Secretary of the Treasury,* 477 F.2d 1223, 1231 (D.C.Cir.), *cert. denied,* 414 U.S. 1001, 94 S.Ct. 356, 38 L.Ed.2d 237 (1973).

Petitioner has also implied that his procedural rights were violated by failure of the agency promptly to notify him under which procedure he was being removed and for what deficiencies. This argument is without merit. On December 28, 1979, the agency issued to petitioner a document entitled "Critical Elements of the Officers' Open Mess Manager's Position Description" that included five "Performance Standards." As petitioner points out, employees may be removed by the agency under Chapter 43 only for noncompliance with such critical elements and performance standards. *See* 5 U.S.C. §§ 4302, 4303. Petitioner contends that his removal was based on failures to meet specific goals that were not communicated as critical elements and performance standards in the December 28, 1979 memorandum and therefore the removal was invalid.

It is true that petitioner's removal was not based solely on failure to meet the issued standards. The removal was not taken pursuant to Chapter 43, however, but pursuant to Chapter 75. Chapter 75 removals need not be based on critical elements and performance standards. Further, petitioner was advised adequately of the performance related failings for which the removal was contemplated and ultimately was taken. On March 19, 1980, a memoran-

dum was issued to petitioner establishing timetables by which several tasks were to be completed. On July 7, 1980 a Proposal to Remove was issued to petitioner indicating removal was being undertaken for failure to satisfy some of the directives in the March 19 memorandum. Petitioner was given an opportunity to respond orally and in writing to all of the alleged deficiencies.

██ The August 6, 1980, ultimate Decision to Remove considered petitioner's replies, was premised on the deficiencies alleged in the July 7 memorandum, and concluded that removal would promote the efficiency of the service. As the July 7 letter was based on the March 19 memorandum, petitioner had more than adequate notice of the performance deficiencies for which his removal was undertaken, regardless of the fact that not all the deficiencies were of a type identified as critical elements or performance standards in the December 28, 1979 document. *See Taffel v. Hampton,* 463 F.2d 251, 252 (5th Cir.1972).[6]

5 U.S.C. § 7513(b) provides that

(b) An employee against whom an action is proposed is entitled to—

(1) at least 30 days' advance written notice . . .

(2) a reasonable time, but not less than 7 days, to answer orally and in writing and to furnish affidavits and other documentary evidence in support of the answers;

(3) be represented by an attorney or other representative; and

(4) a written decision and the specific reasons therefor at the earliest practicable date.

Petitioner was afforded all these procedural safeguards. As stated by the District of Columbia Circuit in a similar context, "Inclusion of some Chapter 43 terminology . . . does not detract from the conclusion that his dismissal could promote the efficiency of the service." *Drew v. United States Dept. of Navy,* 672 F.2d at 200. Use of such

---

6. In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc) this circuit adopted as precedent the decisions of the for-

mer Fifth Circuit decided prior to October 1, 1981.

language in the December 1979 memorandum does not detract from the adequacy of the notice received in the March 19 and July 7, 1980 communications. *See id.* at 200–201. *See also Taffel v. Hampton,* 463 F.2d at 252.

Accordingly the decision of the MSPB is AFFIRMED.