Arnold BICKHAM, M.D.,
Plaintiff-Appellant,

v.

Joyce C. LASHOF, M.D., Individually and as Director of the State of Illinois Department of Public Health, et al., Defendants-Appellees.

No. 78–2559.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 11, 1980.

Decided April 29, 1980.

dismissing a claim attacking on constitutional grounds the Illinois Ambulatory Surgical Treatment Center Act, which is directed to regulating facilities utilized to perform abortions. Plaintiff-appellant Arnold Bickham, a physician licensed to practice in Illinois and the owner of an abortion clinic, the Water Tower Reproductive Center, seeks reversal of the district court order dismissing the first count of a two count complaint brought against various officials of the Illinois Department of Public Health, the Illinois Attorney General, William J. Scott, and the State's Attorney of Cook County, Bernard Carey. Count I alleged that the Ambulatory Surgical Treatment Center Act, Ill.Rev.Stat. ch. 111½, § 157–8.1 *et seq.* (1977), violates the Constitution because it regulates a physician's performance of first trimester abortions. The district court ruled that it would abstain from deciding Count I under the principles of equity, comity, and federalism, concluding that a pending suit filed in the circuit court of Cook County by the Water Tower Reproductive Center presented the identical constitutional issues raised in Dr. Bickham's federal complaint.[1] We hold that abstention was not properly exercised here and accordingly, we reverse the ruling of the district court.

Sophia H. Hall, Chicago, Ill., for plaintiff-appellant.

John E. Dienner III, Asst. State's Atty., Joseph D. Keenan, Asst. Atty. Gen., Chicago, Ill., for defendants-appellees.

Before SWYGERT, PELL and TONE, Circuit Judges.

SWYGERT, Circuit Judge.

The principal issue in this appeal is whether the doctrine of abstention was properly applied by the district court in

I

In order to fully appreciate the issues on appeal, we must trace the rather complex procedural history of this controversy, which was shaped both in state court and federal court.

The State of Illinois requires that physicians must perform abortions in (1) a licensed ambulatory surgical treatment center; (2) a hospital, an ambulatory surgical treatment center, hospital or care facility which is operated by the State; or (3) an ambulatory surgical treatment center, hospital, or care facility operated by the federal government. Ill.Rev.Stat. ch. 111, § 4433

---

1. The district court certified the dismissal of Count I as final under Rule 54(b), Fed.R.Civ.P. The certification was a proper exercise of the court's discretion. Count II, which sought damages for the injuries caused by defendants' alleged racial discrimination in refusing to license Dr. Bickham's facility, still pends before the district court.

(1977). Licensed centers are intermediate facilities that provide more equipment and greater services than are available in a physician's office but less equipment and fewer services than are provided by a licensed hospital.[2] On September 27, 1976 Dr. Bickham submitted an application to the Illinois Department of Public Health for a license to operate the Water Tower Reproductive Center (the Center) as an ambulatory surgical treatment center for the purpose of performing first trimester abortions. On November 18, 1976 the Department approved the construction of the facility, and on the following day the Chicago office of the Zoning Administrator issued an occupancy certificate. Although his application for a license had not yet been approved by the Department of Public Health, Dr. Bickham then began to perform abortions.

As a result of plaintiff's conduct, on December 9, 1976, the Director of the Department of Public Health initiated a suit in the circuit court of Cook County, seeking an injunction and a temporary restraining order prohibiting Dr. Bickham from performing abortions and other surgical procedures at the Center until the facility had been licensed by the Department.[3] Dr. Bickham answered the complaint and, as an affirmative defense, challenged the constitutionality of the Act on First and Fourteenth Amendment grounds. On December 10, 1976 an evidentiary hearing was held, where the constitutional question was raised and briefly argued. Three days later, on December 13, 1976, the circuit court entered a permanent injunction enjoining Dr. Bickham and the Center from conducting abortions at the facility until a license was issued. Without articulating its reasons, the court held that the Ambulatory Surgical Treatment Center Act "is valid and constitutional." No appeal from the

injunction was taken to the Illinois appellate court.

The direction of the controversy then switched to the federal forum. On the afternoon of the same day that the Cook County Circuit Court issued the injunction, plaintiff on his own behalf filed the instant action in the district court; the Center was not a named plaintiff in the suit. The complaint alleged that the Ambulatory Surgical Treatment Center Act was unconstitutional and requested the district court to restrain defendants from enforcing the Act against plaintiff or his patients. The following day Dr. Bickham filed a motion for a temporary restraining order seeking to enjoin the enforcement of the Act. The district court granted plaintiff's request. The temporary restraining order was dissolved, however, two days later on defendants' representation that a license would be issued no later than the following day. In compliance with that representation, the Center received a provisional license to operate an ambulatory surgical treatment center on December 17, 1976.

Dr. Bickham then filed an amended complaint in federal court. Count I, upon which the instant appeal rests, attacked the constitutionality of the Act, alleging violations both of the Due Process Clause and the Equal Protection Clause. Plaintiff alleged that the statute invaded his right to privacy and also violated his right to equal protection because the Act requires that anywhere that abortions are performed or any place that is used primarily for the performance of surgical procedures must be licensed as a surgical treatment center. He further alleged that the rules and regulations promulgated by the Department of Public Health were unconstitutionally vague. Declaratory and injunctive relief were requested. Defendants answered that

**2.** Section 157–8.3 of the Act provides:

"Ambulatory surgical treatment center" means any institution, place or building devoted primarily to the maintenance and operation of facilities for the performance of surgical procedures or any facility in which a medical or surgical procedure is utilized to terminate a pregnancy, irrespective of wheth-

er the facility is devoted primarily to this purpose. . . .

**3.** *People of the State of Illinois, ex rel. Joyce C. Lashof, M.D., State of Illinois, Department of Public Health, Plaintiff v. Water Tower Reproductive Center, Ltd., Arnold Bickham, M.D., and Jack Scott, Defendants,* No. 76 CH 7365.

the constitutional issues raised in the complaint had been fully litigated and resolved in the December 13, 1976 state court proceeding. They maintained that because plaintiff did not appeal the circuit court's decision, he had failed to exhaust his state court remedies and, consequently, was barred from raising the same questions in federal court. They also asserted that the principles of comity and federalism as set forth in *Younger v. Harris*, 401 U.S. 37, 89 S.Ct. 611, 21 L.Ed.2d 558 (1971), mandated the case be dismissed. By July 1977 the motions were fully briefed. The case then lay dormant in the district court for over a year. On October 11, 1978, prior to the district court ruling on the motion to dismiss, the Center's license was revoked following a hearing before the Department of Public Health, where the Center was charged with refusing to allow inspections at the times requested.

On October 23, 1978 the district court, on plaintiff's motion, entered a second temporary restraining order enjoining defendants from enforcing the Act against plaintiff pending a determination on the motion to dismiss. On November 1, 1978 the defendants' motion was denied. The district court rejected defendants' argument grounded on res judicata, stating that: "The granting of the provisional license rendered the state controversy moot. Plaintiff could not have appealed the adverse ruling on the constitutional issues in the state court because no actual controversy existed after the Circuit Court judgment," citing *Wheeler v. Aetna Casualty & Surety Co.*, 57 Ill.2d 184, 311 N.E.2d 134 (1974); *Daley v. License Appeal Commission*, 55 Ill.App.2d 474, 205 N.E.2d 269 (1965). The district court also held that this was not a proper case for applying *Younger* abstention since there was no proceeding pending in the state court.

Once again, our focus must shift back to the state court. On November 13, 1978 the decision revoking the Center's license on October 11, 1978 was appealed by the corpo-

ration (Water Tower Reproductive Center, Ltd.) to the circuit court of Cook County pursuant to the Illinois Administrative Procedure Act, Ill.Rev.Stat. ch. 127, § 1001 *et seq.* (Supp.1979).[4] Although plaintiff is the sole owner of the Center, he is not a party to this action, which still pends before the circuit court. Subsequently, defendants filed a motion requesting the district court to reconsider the November 1 denial of their motion to dismiss. In support of the motion, defendants argued that the administrative review action was a "pending state proceeding" and that plaintiff was capable of raising there the same constitutional issues challenging the Act raised in the federal complaint. In agreement with defendants, the district court stayed the proceedings concerning Count I pending the outcome of the Center's administrative review action in state court and then on November 27, 1978 amended its order by dismissing Count I. On December 7, 1978 plaintiff presented to the district court a motion to reconsider the order of dismissal. The motion was based on the decision of the circuit court denying the Center's motion for stay of the Department's license revocation order pending the full hearing of the administrative review. In that decision, the circuit court stated that the testimony adduced before it did not establish irreparable harm to the Center, but rather "related to irreparable harm that may occur to Doctor Bickham." Following a hearing, the district court denied the motion to reconsider on December 7, 1978 and this appeal ensued.[5]

## II

Plaintiff contends that the district court erred in declining to entertain Count I on the basis of equity, comity, and federalism. Our inquiry into whether abstention was properly invoked here begins with *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). In that case, the Supreme Court established

---

**4.** *Water Tower Reproductive Center, Ltd. v. Illinois Department of Public Health*, 78 L 22740.

**5.** Plaintiff appeals from both the order of November 27, 1978 and the order of December 7, 1978.

the doctrine which requires a federal court to stay its hand, though retaining jurisdiction, and instruct the parties to repair to state court for the purpose of litigating an unsettled state law question, the resolution of which may avoid the need for a federal determination of the constitutional challenge to the state statute. The federal judiciary should postpone jurisdiction under such circumstances, Justice Frankfurter explained, "because of 'scrupulous regard for the rightful independence of the state governments' and for the smooth working of the federal judiciary." *Id.* at 501, 61 S.Ct. at 645, (citations omitted). Subsequent to the *Pullman* decision, two additional categories of abstention have been recognized by the Supreme Court: the *Burford*-type and the *Younger*-type.[6] *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). Here the district court relied on *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Accordingly, we are presented with the task of determining whether the federal forum closing rules established by the Supreme Court in that case apply to this case.

*Younger* held that federal courts should not enjoin ongoing state criminal proceedings except where necessary to prevent irreparable injury to the plaintiff. In the *Younger* situation, only upon a "showing of bad faith, harassment, or any other unusual circumstance that would call for equitable relief," can a federal injunction be ordered against a pending state criminal prosecution. *Id.* at 54, 91 S.Ct. at 755. If injunctive relief against a pending state prosecution is barred because there is no showing of irreparable injury, it has been held that declaratory relief should also be denied, and the action should be dismissed without consideration of the constitutional question raised concerning the state statute. In this seminal decision, the Supreme Court addi-

tionally instructed federal courts to show deference to state judges under the principles of comity and federalism. The concept of federalism, or "Our Federalism" as it has come to be known, was defined by the Court:

> This underlying reason for restraining courts of equity from interfering with criminal prosecutions is reinforced by an even more vital consideration, the notion of "comity," that is, a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways. This, perhaps for lack of a better and clearer way to describe it, is referred to by many as "Our Federalism," and one familiar with the profound debates that ushered our Federal Constitution into existence is bound to respect those who remain loyal to the ideals and dreams of "Our Federalism." The concept does not mean blind deference to "States' Rights" any more than it means centralization of control over every important issue in our National Government and its courts. The Framers rejected both these courses. What the concept does represent is a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States.

*Younger, supra*, 401 U.S. at 44, 91 S.Ct. at 750. After *Younger*, this doctrine was expanded to civil proceedings initiated by the state, which were "akin" to criminal prose-

---

**6.** The abstention doctrine as articulated in *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943) requires the district court to abstain and to relegate a federal question to the state courts "because of their superior competence to adjudicate such matters or because the federal issues touch matters of traditional state concern, the resolution of which is of singular importance to the administration of state affairs." *Wynn v. Carey*, 582 F.2d 1375, 1382–83 (7th Cir. 1978).

cutions. *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975). Finally, in *Juidice v. Vail*, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977), the Supreme Court held that "the principles of *Younger* and *Huffman* are not confined solely to the types of state actions which were sought to be enjoined in those cases." *Id.* at 334, 97 S.Ct. at 1217. In deciding whether to apply the *Younger* rules, *Moore v. Sims*, 442 U.S. 415, 430, 99 S.Ct. 2371, 2381, 60 L.Ed.2d 994 (1979) instructed that "the only pertinent inquiry is whether the state proceedings afford an adequate opportunity to raise the constitutional claims . . . ."

The district court, in rejecting defendants' first attempt to dismiss Count I of the complaint on November 1, 1978, found that federal deferral to the state proceeding was not required because the state proceedings had terminated, citing *Steffel v. Thompson*, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974). Approximately four weeks later, however, the district court granted defendants' motion to dismiss Count I. In the intervening period, the Center had filed an administrative review action against the Department in the Cook County Circuit Court. In their second motion to dismiss, defendants argued that the case in the state court qualified as a "pending state proceeding" and that Bickham, sole owner of the Water Tower Reproductive Center, was capable of raising the same constitutional issues in state court as had been raised in the federal court. The district court, apparently finding no extraordinary circumstances which would justify federal intervention, dismissed Count I.

On appeal, plaintiff contends that there is no pending state court proceeding to which plaintiff is a party and where the issues raised in the federal complaint may be directly addressed. Thus, he says, *Younger* is inapplicable. Having examined the nature of the state and federal court proceedings and considered the parties to those actions, we find that the principles of comity and federalism did not require the district court to abandon jurisdiction.

There is no doubt that the challenge to the Ambulatory Surgical Treatment Center Act raised in the federal complaint is not presently before the state tribunal. The thrust of Dr. Bickham's complaint is that the State cannot pass any law which touches in any way a physician's performance of first trimester abortions. In making this claim, the complaint rests on the Supreme Court's decisions in *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) and *Doe v. Bolton*, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973). On the other hand, the complaint for administrative review filed in the state court alleges that the Department's decision to revoke its license denied the Center due process and that the statute and regulations on which the Department relied in revoking the license deny physicians and their patients due process. Before the Department's hearing officer, the Center had specifically argued that the Department exceeded its authority in demanding entry to facilities, such as the Center, unannounced and at its convenience.

Nonetheless, defendants argue that the state proceedings provide a proper forum for vindication of Dr. Bickham's federal claims, and therefore the *Younger* rules do apply. The realities of this case compel us to reach an opposite conclusion. First, the Center is defunct, and thus, it is uncertain whether the state court would refuse to hear the case on the ground of mootness. Second, Dr. Bickham is not presently a named plaintiff in the state proceeding. Defendants, however, argue that Dr. Bickham, who is the sole owner of the Center, should be treated as though the administrative review action in fact was a pending state proceeding in which he is the plaintiff. In making this argument, defendants presumably rely on the decision in *Hicks v. Miranda*, 422 U.S. 332, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975). There the Court set forth a new aspect of the *Younger* rule: By nature of the communality of his interest was that of a state defendant, a federal plaintiff may be foreclosed from obtaining relief in federal court. In *Hicks*, the plaintiffs, who operated a movie theatre, sued in

federal court for an injunction and declaration that certain copies of a film owned by them had been improperly seized in state proceedings. Prior to the filing of the federal complaint, state officials, acting pursuant to authorized warrants, had seized as obscene copies of a film from the plaintiffs' theatre and had arrested two of their employees under a state obscenity statute. Plaintiffs alleged in federal court that the state law was unconstitutional. Two of the operators were named as party defendants in the state court shortly after the filing of the federal complaint. In holding that the district court erred by proceeding to the merits of the federal suit, the Supreme Court noted that the plaintiffs "had a substantial stake in the state proceedings . . . ." *Id.* at 348, 95 S.Ct. at 2291. In regard to the operators vis-a-vis the state defendants, the Court said:

> Obviously, their interests and those of their employees were intertwined; and, as we have pointed out, the federal action sought to interfere with the pending state prosecution.

*Id.* at 348, 95 S.Ct. at 2291. The Court further stated that the *Younger* rules applied to the operators' suit, "[a]bsent a clear showing that [the operators], whose lawyers also represented their employees, could not seek the return of their property in the state proceedings and see to it that their federal claims were presented there . . ." *Id.* at 349, 95 S.Ct. at 2291. *Hicks* is inapposite here. The relationship between the Center and Dr. Bickham is that of a corporation and its sole shareholder. The interests of Dr. Bickham, as an individual, are not sufficiently "intertwined" with those of the Center as to be adequately represented in the state proceeding. As we have indicated, Dr. Bickham has interests in the validity of the Act that do not pertain with equal force to those of the Center. Foremost, it is asserted in the federal suit that so long as the Act remains in force, limiting the place in which a physician may perform an abortion, great injury is being done to plaintiff and his patients. The constitutional rights of the doctor and his patients to privacy—to consult with Dr. Bickham con-

cerning whether to have their pregnancy terminated during the first trimester or carry the fetus to term—is alleged to be hindered. In contrast, the interest of the Center is much more limited to the particular license revocation. It has no direct interest in the right of Dr. Bickham to perform a trimester abortion at any location. Thus, the plaintiff in this case and the plaintiff in state court, while sharing some common interests, cannot be said to be as "intertwined" as were the theatre owner and his employees in *Hicks.*

But even if Dr. Bickham cannot be subject to *Younger* on the ground of communality of interests with the Center, defendants argue that Dr. Bickham's constitutional claims could be raised before the state court through other means. We do not share, however, their opinion that a real opportunity exists for his constitutional claims to be raised there. As discussed earlier, Dr. Bickham is not presently a plaintiff in the state proceeding. He was not the subject of the license revocation proceeding nor is he now challenging the revocation of the Center's license. Additionally, the Center most likely could not assert Dr. Bickham's constitutional rights before the state tribunal. This became clear following the hearing held in state court on the Center's motion for stay of the revocation order entered by the Department. In denying relief, the state court judge stated that the question of harm to Dr. Bickham was not an issue in the Center's proceeding. The Center may raise in state court the issue of whether the Act is unconstitutional, but it would be raised on behalf of a corporation which operated at a specific place. This issue is only a part of the one raised by Dr. Bickham in federal court.

The fact still remains that plaintiff's complaint was filed two years before the initiation of the state suit by the Center. At that time Dr. Bickham had the choice to litigate in federal or state court. *City Bank Farmers Trust Co. v. Schnader,* 291 U.S. 24, 34, 54 S.Ct. 259, 262, 78 L.Ed. 628 (1934). He could, of course, have chosen to inter-

vene in the administrative review action, but he was not obligated to do so. He was entitled under federal law to have his constitutional claims heard in a federal forum.

Since Dr. Bickham neither is, or ever was, a party to the state court proceeding and since there is no pending state court suit regarding the conduct complained of here to which the federal court should give deference, *Younger* abstention is inapplicable. Abstention serves no legitimate purpose where, as in this case, the constitutional claims raised in the federal complaint cannot be resolved in the state proceedings.

In reaching our decision, we are mindful that abstention is rooted in equity. Thus, we cannot overlook the delays that have occurred in plaintiff's case—approximately three years and four months have passed since the federal complaint was filed, *see, e. g., Harman v. Forssenius,* 380 U.S. 528, 537, 85 S.Ct. 1177, 1183, 14 L.Ed.2d 50 (1965); *Hostetter v. Idlewild Bon Voyage Liquor Corp.,* 377 U.S. 324, 329, 84 S.Ct. 1293, 1296, 12 L.Ed.2d 350 (1964); *Griffin v. School Board of Prince Edward County,* 377 U.S. 218, 228–29, 84 S.Ct. 1226, 1227, 12 L.Ed.2d 256 (1964), or the nature of the injury alleged to occur as long as the Act remains in force. Finally, we cannot ignore the rule of this circuit that the district court should not close the federal courthouse doors to a plaintiff except in the "extraordinary" situation where "the order to the parties to repair to the State court would clearly serve an important countervailing interest." *Local Div. 519, Amalgamated Transit Union v. LaCrosse Municipal Transit Utility,* 585 F.2d 1340, 1350 (7th Cir. 1978) (citation omitted). This case is not an exception to the general rule.

### III

█ Even if abstention was not proper, defendants maintain, there are two additional grounds that bar plaintiff from challenging the constitutionality of the statute in federal court. In dismissing Count I, the district court relied solely on abstention principles. Nonetheless, we believe a discussion of the contentions made by defendants is warranted.

Presumably relying on the holding in *Huffman v. Pursue, Ltd., supra,* defendants first argue that *Younger* forecloses a federal action because plaintiff failed to appeal the 1976 decision of the state chancery court. In *Huffman,* the Supreme Court denied access to a federal forum to an Ohio theatre owner seeking a determination that the state nuisance law violated his First Amendment rights and an injunction against enforcement of a state court decision holding his movie theatre a nuisance and ordering, as a penalty, its closing for one year. Though the case was a civil one, the Court deemed it quasi-criminal because it was initiated by the State and was closely akin to criminal enforcement proceedings; consequently it was held that *Younger* abstention applied. The plaintiff's only relief, the Court held, was to appeal the lower court's decision through the Ohio appellate system. *Huffman, supra,* 420 U.S. at 605, 95 S.Ct. at 1208. In spite of the decision's seemingly broad preclusive effect to unappealed state court judgments, the recent decision in *Wooley v. Maynard,* 430 U.S. 705, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977), substantially weakens defendants' reliance on *Huffman.* In *Wooley v. Maynard,* the plaintiff, after pleading not guilty on the ground that a state statute violated his religious beliefs, was convicted three times for defacing the motto "live free or die" embossed on New Hampshire automobile license plates. The plaintiff had declined to appeal his criminal convictions and had brought an action for an injunction in federal court, raising the identical issue asserted in the state proceeding. The defendant argued, as in this case, that Maynard should have appealed his criminal conviction in the state court rather than initiate a federal court action. The Supreme Court affirmed the issuance of an injunction against further enforcement of the state law. *Huffman* was found inapposite because in that case the theatre owner was seeking to prevent, by his federal action, the enforcement of a state court judgment. The Court stated:

Here, however, the suit is in no way "designed to annul the results of a state trial" since the relief sought is wholly prospective, to preclude further prosecution under a statute alleged to violate [Maynard's] constitutional rights. Maynard has already sustained convictions and has served a sentence of imprisonment for his prior offenses. He does not seek to have his record expunged, or to annul any collateral effects those convictions may have, e. g., upon his driving privileges. The Maynards seek only to be free from prosecution for future violations of the same statutes. *Younger* does not bar federal jurisdiction.

*Id.* at 711, 97 S.Ct. at 1433 (citation omitted). The decision gave no binding effect to the unappealed judgment resulting from the previous prosecution in the state court. *See: New Jersey Education Ass'n v. Burke,* 579 F.2d 764, 772 (3d Cir.), *cert. denied,* 439 U.S. 894, 99 S.Ct. 252, 58 L.Ed.2d 239 (1978). Here, Dr. Bickham does not seek to attack collaterally the revocation of the Center's license but, rather, seeks prospective relief against further prosecution. Thus, *Huffman* does not control this case.

■ Defendants also argue that Dr. Bickham's constitutional challenge to the Act in this suit is barred by the principles of res judicata and collateral estoppel. We disagree.

Although the Supreme Court has yet to decide how those principles apply to civil rights litigation, such as this case, Wright, Miller & Cooper *Federal Practice and Procedure: Jurisdiction,* § 4253 (1978), this court has held, at least where a federal action is commenced before a final decision by the state court, that a state court judgment forecloses a section 1983 claimant from raising his claims in federal court only if such claims have been pressed before and resolved by a state court. *Kurek v. Pleasure Driveway & Park Dist.,* 557 F.2d 580, 594-95 (7th Cir. 1977); *Reich v. City of Freeport,* 527 F.2d 666, 670-72 (7th Cir. 1975). We recognize that the federal complaint here was filed the afternoon following the decision of the state court. Regard-

less of that fact, which distinguishes this case from those noted above, we believe due process requires us to reach the questions of whether plaintiff fully litigated his grievances before the state tribunal and whether the state court resolved them. "[T]he doctrine of collateral estoppel will not be applied unless it appears that the party against whom the estoppel is asserted had a full and fair opportunity to litigate the issue in the prior proceeding and that application of the doctrine will not result in an injustice under the particular circumstances of the case." *Butler v. Stover Brothers Trucking Co.,* 546 F.2d 544, 551 (7th Cir. 1977); cf. *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 328–29, 91 S.Ct. 1434, 1442, 1443, 28 L.Ed.2d 788 (1971); *England v. Louisiana State Board of Medical Examiners,* 375 U.S. 411, 417, 84 S.Ct. 461, 465, 11 L.Ed.2d 440 (1964).

Plaintiff argues that the chancery court could not have fully and fairly considered the constitutional claim raised here because that court entered a permanent injunction and finding of constitutionality without giving the parties an opportunity for a meaningful hearing. The record bears out this contention. There is evidence that the constitutional issue was not briefed and was not extensively argued. Additionally, at the November 20, 1978 hearing in the federal district court, the judge, who is intimately familiar with this case, commenting on the nature of the state court's inquiry into the constitutionality of the Act stated: ". . . (T)o be frank, although there was some discussion in the hearing before Judge Wosik as to the constitutionality of the question, it didn't appear to me to be a full hearing, at least that I would wish to have on such an issue. . . ." We agree with the district judge's interpretation of the transcript produced at the state court hearing. Thus, we are compelled to conclude that the state court ruling does not preclude Dr. Bickham from raising his constitutional claims in the district court.

■ Lastly, defendant Bernard Carey, State's Attorney, Cook County, moved to

dismiss this appeal, alleging that no case or controversy within the meaning of Article III of the Constitution can be discerned between Dr. Bickham and defendant Carey. His argument is that plaintiff, who is serving a two year sentence for violating federal fraud statutes, is presently incapable of violating the Ambulatory Surgical Treatment Center Act. Accordingly, this defendant says, he cannot presently prosecute Dr. Bickham for violating the Act.

All that is required by Article III is that "[t]he controversy . . . be definite and concrete, touching the legal relations of parties having adverse legal interests." *Aetna Life Insurance Co. v. Haworth*, 300 U.S. 227, 240–41, 57 S.Ct. 461, 464, 81 L.Ed. 617 (1937). At oral argument, counsel for Dr. Bickham stated that he desires to practice first trimester abortions following his release from prison, and the record establishes that the State intends to prosecute if he does so. In these circumstances, Article III is satisfied.

That no criminal prosecution may be instituted against Dr. Bickham at this time does not affect the presence of a controversy; decisions of the lower federal courts reflect a receptive attitude toward anticipatory constitutional challenges to statutes. *See e. g., International Society for Krishna Consciousness v. Eaves*, 601 F.2d 809, 817 (5th Cir. 1979). This attitude is consistent with the holdings of the Supreme Court. For example, in *Doe v. Bolton, supra*, 410 U.S. at 188, 93 S.Ct. at 745, the Supreme Court noted that when a plaintiff asserts an intention to engage in conduct arguably affected with constitutional interest but proscribed by statute, and there exists a credible threat of prosecution thereunder, he "should not be required to await and undergo a criminal prosecution as the sole means of seeking relief." Accordingly, we find this dispute to be viable for purposes of Article III.[7]

In conclusion, we hold that the district court abused its discretion by refusing to exercise jurisdiction over Count I of plaintiff's complaint. Because we find no other basis for refusing Dr. Bickham the right to proceed with the merits of his cause in the federal forum, we reverse the judgment of the district court and remand for further proceedings.

---

7. Defendant Carey's March 5, 1980 motion to dismiss the appeal is thus denied.